[Civ. No. 34409. First Dist., Div. One. May 30, 1974.]

JAMES URSINO et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
McDONALD'S SYSTEMS OF CALIFORNIA, INC., et al.,
Real Parties in Interest.

**COUNSEL**

Davis, Cowell & Bowe, Alan C. Davis, Patricia A. Carson and Wayne S. Canterbury for Petitioners.

No appearance for Respondent.

Haskell Titchell, Michael L. Ohleyer, Titchell, Maltzman, Mark, Bass & Ohleyer and Yale H. Smulyan for Real Parties in Interest.

**OPINION**

**MOLINARI, P. J.**—In this case we issued an alternative writ of mandate to inquire whether the Board of Permit Appeals of the City and County

of San Francisco (hereinafter "the Board") lost jurisdiction to act upon petitioners' appeal from the issuance of a building permit by the department of public works of said city and county (hereinafter "the Department") to Frank Hunt and Carol Hunt (hereinafter "the Hunts") for the construction of a building.

Section 3.651 of the Charter of the City and County of San Francisco (hereinafter "the Charter") provides, in pertinent part, that ". . . any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit . . . granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing . . . such . . . permit, . . . After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such . . . permit, or, by the vote of four members, may overrule the action of such department and order that the permit . . . be . . . refused. . . ."

Section 3.651 of the Charter is implemented by sections 8 and 14 of San Francisco Municipal Code (pt. III, art. 1) which provide for the method of appeal, the time and place of hearing, and the conduct of such hearing. It is specifically provided that the Board shall act on the appeal not later than 40 days after the filing of the notice of appeal. Section 14 of the Municipal Code provides, in relevant part, that "the Board may concur in the action of the department authorized to issue . . . the permit, or may overrule the action of said department and order that the permit be . . . denied, . . ."

With respect to the composition of the Board it is provided in section 3.650 of the Charter that it shall consist of five members whose terms shall be for four years.[1]

In the instant case the Department issued a building permit to the Hunts on July 16, 1973.[2] The permit called for the construction of a building for restaurant purposes. This building was to be leased to McDonald's Systems of California, Inc. (hereinafter "McDonald's") and was to be constructed by Arne Falk Construction Company (hereinafter "Falk").

---

[1]Section 3.650 of the Charter provides, in relevant part, as follows: "The mayor shall appoint five qualified electors, other than city and county officials or employees, for terms of four years, to constitute a board of permit appeals. . . . and upon these and successive expirations the mayor shall appoint their successors for four-year terms."

[2]Unless otherwise indicated all dates have reference to the year 1973.

Petitioners, who operate restaurant establishments in the vicinity of the proposed construction and who oppose its construction, filed a timely notice of appeal from the Department's issuance of the permit. This notice of appeal was filed on July 16. Under the time limitation set out in the Municipal Code the Board was required to hear said appeal and to act thereon not later than 40 days after July 16, i.e., no later than August 27.[3]

The Board scheduled a hearing on July 30[4] but the hearing was postponed for one week because only three commissioners were present. At that time the Board was composed of only four members. One member was on vacation and the other had previously resigned and his successor had not been appointed by the mayor who was the appointing power. At the next meeting on August 6 there were four commissioners present at the meeting to conduct business. The fifth member had not been appointed. Petitioner Ursino requested that the matter be continued until a fifth member could be present to participate in the hearing of the matter.[5] This request was granted and the matter was continued until such time as the fifth commissioner could be present.

On August 8 another commissioner resigned leaving three members as the composition of the Board. Two new commissioners were appointed by the mayor on or about September 4 and they took office on September 13. In the meantime, on September 12, the Hunts and McDonald's filed separate actions in the superior court wherein they sought and obtained alternative writs of prohibition restraining the Board from taking any action on petitioners' appeal other than to uphold the validity of the previously issued permit. On September 17 the Board convened with five commissioners present. Petitioner Ursino stated he was ready to proceed but due to the issuance of the alternative writ the Board did not proceed to hear petitioners' appeal.

On October 5 respondent superior court ordered its peremptory writ of prohibition to issue in both actions. However, on October 15 the Hunts voluntarily dismissed their actions without prejudice. It should be here noted that petitioners were named as parties in the Hunt action but

---

[3] The 40th day fell on August 25 which was a Saturday, thus extending the time to the next legal day which was Monday, August 27. (Code Civ. Proc., § 12a.)

[4] The Municipal Code provides that the time and place of hearing "shall be not less than five (5) nor more than fifteen (15) days after the filing of said appeal, . . ." (Part III, art. 1, § 8.)

[5] Ursino was apparently aware that it took four votes to deny a permit already issued and that he would be required to obtain the vote of all four commissioners present in order to overrule the issuance of the permit.

they were not named or served in McDonald's action. The Board next convened on October 15 and at this meeting voted not to appeal the ruling of respondent court.

Petitioners thereafter moved, pursuant to Code of Civil Procedure section 663, to set aside and vacate the judgment in the McDonald's action. These motions were denied. Petitioners then filed an action against the Hunts, McDonald's and Falk seeking a temporary restraining order and a preliminary injunction. A temporary restraining order and order to show cause why a preliminary injunction should not be granted were issued. The defendants to this action demurred and the demurrer was sustained, with leave to amend, on the ground that the complaint failed to state a cause of action. On the basis of this ruling the respondent court denied petitioners' request for a preliminary injunction pendente lite. The petitioners then filed the instant writ application with this court and we issued the alternative writ of mandate.

■ Petitioners complain that respondent superior court acted in excess of its jurisdiction by entering its judgment in the action brought by McDonald's without naming petitioners as real parties in interest. As already noted, McDonald's brought the action to prevent the Board from hearing petitioners' appeal.

Section 3.651 of the Charter permits "any person who deems that his interests or property or that the general public interest will be adversely affected" to pursue such an appeal to the Board. Petitioners operate restaurants in the immediate vicinity of the proposed McDonald's restaurant. They have personal and property interests which they apparently feel will be adversely affected by the proposed construction. They also apparently feel that the general public interest will not be served by permitting the McDonald's restaurant to be built. It was petitioners who set in motion the administrative processes of the Board. They had something to gain from a favorable vote of the Board, and something to lose by the granting of the building permit. It is absurd to avoid the obvious conclusion that petitioners are interested and indispensable parties.[6]

Code of Civil Procedure section 389, subdivision (a) defines an indispensable party, inter alia, as one who ". . . claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a *practical matter impair or impede his ability to protect that interest* . . . ." (Italics added.) There can be little

---

[6]As previously noted in the action brought by the Hunts, petitioners *were* named as parties.

doubt that McDonald's lawsuit, if successful (as it was) would as a practical matter frustrate petitioners' appeal before the Board and thus impair their ability to protect their interests. Petitioners were indispensable parties because the relief sought by McDonald's would injure or affect their interests. (*Bank of California* v. *Superior Court,* 16 Cal.2d 516, 522 [106 P.2d 879]; *Thomson* v. *Talbert Drainage Dist.,* 168 Cal. App.2d 687, 689 [336 P.2d 174].) An attempt to adjudicate their rights without joinder was futile. (*Bank of California* v. *Superior Court, supra;* see Code Civ. Proc., § 1107.)

McDonald's argument that it was not necessary to name petitioners as real parties because they were named in a similar lawsuit brought by the Hunts is tenuous. It is elementary that the constitutional guarantee of due process requires that proper notice be given to a party. (See Code Civ. Proc., § 1107.) This requirement is not satisfied by actual knowledge without notification conforming to the statutory requirements. (See *Waller* v. *Weston,* 125 Cal. 201, 203 [57 P. 892]; *Chaplin* v. *Superior Court,* 81 Cal.App. 367, 377 [253 P. 954].) As pointed out in *Bank of California* the failure to obtain personal jurisdiction over an indispensable party deprives the court of subject matter jurisdiction. (16 Cal.2d at p. 522; see *Covarrubias* v. *James,* 21 Cal.App.3d 129, 134 [98 Cal.Rptr. 257]; *Southern Cal. Title Clearing Co.* v. *Laws,* 2 Cal.App.3d 586, 589 [83 Cal.Rptr. 8]; *Thomson* v. *Talbert Drainage Dist., supra,* 168 Cal. App.2d 687, 689-690; 1 Witkin, Cal. Procedure (2d ed. 1970) § 66, pp. 588-589.)[7]

Since respondent court was powerless to proceed until petitioners were brought in it erred in denying petitioners' motion to vacate the judgment. Under the circumstances respondent court was required to set aside its judgment. (*Thomson* v. *Talbert Drainage Dist., supra,* 168 Cal.App.2d 687, 690.) ▪ The judgment being void mandamus lies to compel the mandatory act of setting it aside. (See *State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13]; *National Union Fire Ins. Co.* v. *Superior Court,* 252 Cal.App.2d 568, 573 [60 Cal.Rptr. 535]; *Cook* v. *Superior Court,* 240 Cal.App.2d 880, 884 [50 Cal.Rptr. 81]; *W. A. Rose Co.* v. *Municipal Court,* 176 Cal.App.2d 67, 75 [1 Cal.Rptr. 49]; *California etc. Co.* v. *Superior Court,* 13 Cal.App. 65, 70-71 [108 P. 882].)

---

[7]The lack of merit to McDonald's argument is apparent when we consider that although the Hunts, who obtained the same relief obtained by McDonald's and who had named petitioners as parties, dismissed their action, thus leaving petitioners in the posture where they could not directly challenge the propriety of the granting of such relief.

■ We observe that petitioners have also appealed from the order denying their motion to vacate. On such an appeal we could not only review the proceedings below for excess of jurisdiction but also for error. (See *Greif* v. *Dullea,* 66 Cal.App.2d 986, 992 [153 P.2d 581].) In *Greif* a party who had not been joined in an action moved to set aside the judgment therein on the basis that he was an indispensable party. The motion was denied and he appealed from the order. On appeal we held that in order to afford a plain, speedy and adequate remedy we could not only decide the question of the propriety of the order denying the motion to vacate where it appeared that the motion should be granted but that we could also review for error the proceedings of the superior court. (66 Cal.App.2d at p. 992.) The instant situation is similar. Although petitioners seek a review of the propriety of the order denying the motion to vacate both by way of appeal and extraordinary writ the dictates of a plain, speedy and adequate remedy require that we review for error the proceedings before respondent court.

The respondent court and real parties in interest do not object to our consideration of the determination made by respondent court if petitioners should have been joined in McDonald's action as indispensable parties. The core issue has been presented and argued by the parties on the appellate level. It is therefore appropriate under the circumstances to dispose of the issue on its merits even though the matter is before us on a writ application rather than on an appeal. (See *County of Santa Clara* v. *Superior Court,* 4 Cal.3d 545, 551-552 [94 Cal.Rptr. 158, 483 P.2d 774]; *Hankla* v. *Municipal Court,* 26 Cal.App.3d 342, 353 [102 Cal. Rptr. 896].) That issue is whether the Board lost its jurisdiction over petitioners' appeal after 40 days.

■ It is contended by petitioners that since the vote of four members of the Board was required to overrule the Department the time during the 40-day period in which the Board was composed of only three members must be excluded from the 40-day computation because the Board lacked a quorum. If petitioners' contention has merit the meeting of the Board which was enjoined by respondent court and at which the Board proposed to consider petitioners' appeal fell within the 40-day period specified in sections 8 and 14 of the San Francisco Municipal Code.

■ The Municipal Code of the City and County of San Francisco provides for the method of appeal to the Board, in pertinent part, as follows: "On the filing of any appeal, the Board . . . *shall* act thereon not later than forty (40) days after such filing. . . ." (Italics added; pt. III, art. I, § 8.) The same code, dealing with the hearing of and decision

on the appeal, provides, in relevant part, that "After said hearing and such further investigations as the board may deem necessary, *but not later than forty (40) days after the filing with it of the first appeal,* the board may concur in the action of said department . . . or may overrule the act of said department . . . ." (Italics added, pt. III, art. 1, § 14.) These provisions clearly show that the legislative intent was to make these time provisions mandatory, rather than directory, and that the designation of time was intended as a limitation of power, authority or right. (See *Pulcifer* v. *County of Alameda,* 29 Cal.2d 258, 262 [175 P.2d 1]; *Anderson* v. *Pittenger,* 197 Cal.App.2d 188, 194 [17 Cal.Rptr. 54].) Indeed, in *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, 39, fn. 11, 41-42, fn. 19, 45, fn. 24 [56 Cal.Rptr. 672, 423 P.2d 824], these very same provisions were held to be jurisdictional. (See also *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 323 [144 P.2d 4].)

We observe that although the word "shall" has been held in some cases to be directory rather than mandatory (see *Pappadatos* v. *Superior Court,* 209 Cal. 334, 335 [287 P. 342]), the ordinances in the present case provided that the Board "shall act" on the appeal "not later than" 40 days after the filing of the appeal. The phrase "not later than" is used in both section 8 and section 14 of the Municipal Code. The use of the word "shall" in conjunction with the phrase "not later than" is clearly indicative of a mandatory declaration. (See *Cake* v. *Los Angeles,* 164 Cal. 705, 709-710 [130 P. 723]; *City of Oakland* v. *Burns,* 46 Cal.2d 401, 406 [296 P.2d 333]; *Steele* v. *Bartlett,* 18 Cal.2d 573, 574 [116 P.2d 780].)

■ Accordingly, where a statute absolutely fixes the time within which an act is to be done it is peremptory and the act cannot be done at any other time unless during the existence of the prescribed time the time has been extended by an order made for that purpose under authority of law. (*Connor* v. *Southern Cal. M. R. Co.,* 101 Cal. 429, 431 [35 P. 990]; *Tregambo* v. *Comanche etc. Co.,* 57 Cal. 501, 503; see *Anderson* v. *Pittenger, supra,* 197 Cal.App.2d 188, 194.) ■ We apprehend, therefore, that any purported determination by the Board after the 40-day period would be in excess of the Board's jurisdiction and void. The effect of the Board's failure to act is a concurrence in the action of the Department. In such a situation the action of the Department constitutes the final decision relative to the granting or denial of a permit since the posture of the matter is the same as if the order of the Department had not been appealed. (See *Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 34, 43.)

■ It is undisputed in the present case that the Board did not act

within 40 days from July 16, the date of the filing of the appeal. It is also undisputed that from August 8 to September 13 there were two vacancies on the Board and that during this period the Board consisted of only three members. As already pointed out, section 3.651 of the Charter provides that within said 40-day period the Board may concur in the action of the Department or by a vote of four members may over-rule such action. The immediate inquiry is whether there was a quorum of the Board from August 8 to September 13 during which period the Board could hear and determine appeals.

■ Civil Code section 12 and Code of Civil Procedure section 15 provide: "Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the Act giving the authority." (See *People* v. *Hecht,* 105 Cal. 621, 627 [38 P. 941]; *Jacobs* v. *Board of Supervisors,* 100 Cal. 121, 132 [34 P. 630]; *People* v. *Coghill,* 47 Cal. 361, 363.) Accordingly, unless it is otherwise expressed in the act giving authority, the authority, although joint where given to three or more, can be exercised by the majority which, for all practical purposes, becomes the full board. (*People* v. *Hecht, supra.*) Thus, if a board is composed of five members three of such members constitute a majority capable and competent to exercise the authority of the whole board. (*People* v. *Hecht, supra.*) ■ In the instant case, however, it is otherwise expressed in the act giving authority. Although section 3.651 of the Charter permits a majority of the Board, i.e., three members, to concur in the action of the Department, it requires four members to overrule the action of the Department. In view of this specificity it must be concluded that in order for the Board to hear and determine an appeal four members of the Board constitute a quorum. The action of the quorum is the action of the Board and the action of a majority of such quorum is valid and binding. (*People* v. *Hecht, supra,* at p. 628; *People* v. *Harrington,* 63 Cal. 257, 258.)

To hold that three members of the Board constitute a quorum would present the incongruous situation that if the Board has only three qualified members out of its total authorized complement of five members present at the hearing of an appeal the Board can only act in one manner, i.e., to concur in the action of the Department. The same result attains if the Board has full membership but only three are present at the hearing. We are of the opinion, therefore, that it is clearly the legislative intent that for purposes of hearing the merits of an appeal four members of the Board must be present at the hearing.

We conclude that under the circumstances presented petitioners will

be deprived of due process unless they are accorded a hearing on their appeal before the Board with at least four of its members present. In *Gray* v. *Whitmore*, 17 Cal.App.3d 1, 20-21 [94 Cal.Rptr. 904], we observed that "The term 'due process of law' asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice. [Citations.] The definition in each case depends upon the circumstances varying with the subject matter and the necessities of the situation. [Citation.]" We observed, further, in *Gray* that under the concept of "due process of law" procedural as well as substantive rights are protected. (At p. 21.) Accordingly, procedural due process requires that a person who is subject to being deprived of a substantial right must be given an opportunity to defend himself (*Gray* v. *Whitmore, supra,* at p. 21; see *Shields* v. *Utah Idaho R. Co.,* 305 U.S. 177, 182 [83 L.Ed. 111, 115-116, 59 S.Ct. 160]; *Gray* v. *Hall,* 203 Cal. 306, 318 [265 P. 246]), and the propriety of the deprivation must be resolved in a manner consistent with essential fairness. (*Gray* v. *Whitmore, supra;* see *Hannah* v. *Larche,* 363 U.S. 420, 422 [4 L.Ed.2d 1307, 1310, 80 S.Ct. 1502].) Substantive due process, on the other hand, deals with protection from arbitrary legislative action, even though the person whom it is sought to deprive of his substantial right is afforded the fairest of procedural safeguards. (*Gray* v. *Whitmore, supra.*) "In substantive law such deprivation is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied, i.e., the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained. [Citations.]" (*Gray* v. *Whitmore, supra,* at p. 21.) In the instant case to deprive petitioners of the right to have their appeal heard and determined by at least four members of the Board offends the concept of due process in both the procedural and the substantive sense.

In the instant case when the Board was reduced to three members as a result of the commissioner's resignation on August 8, the Board still had 19 days remaining within which it could act under the 40-day limitation. However, it was impossible, impracticable and futile for the Board to proceed with a hearing upon petitioners' appeal during this 19-day period because the Board consisted of only three members. The period during which the Board could not act should be excluded from the 40-day limitation period. Under the due process mandate we may decisionally declare such an exclusion and thus bring into play the rule hereinabove alluded to that where a statute is peremptory in fixing the time within which the act is to be done the prescribed time may be extended by an order

made for that purpose under authority of law. (*Connor* v. *Southern Cal. M. R. Co., supra,* 101 Cal. 429, 431; *Tregambo* v. *Comanche etc. Co., supra,* 57 Cal. 501, 503.)

The authority of law we invoke finds precedent and analogy in the many cases that have held that the fixed statutory time during which an action must be brought to trial or be subject to dismissal under the dismissal statutes (Code Civ. Proc., § 583) is extended by that period of time during which it would have been impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial during the prescribed period. (See *Crown Coach Corp.* v. *Superior Court,* 8 Cal.3d 540, 546-547 [105 Cal.Rptr. 339, 503 P.2d 1347], and cases there cited.) It is a maxim of jurisprudence that "Where the reason is the same, the rule should be the same." (Civ. Code, § 3511.) In the present case the circumstance that two commissioners had resigned was beyond the control of petitioners and the remaining members of the Board; nor did any of them have any control over the making of appointments to the Board.

The contention of real parties is that petitioners ought not to be accorded any relief because on August 6 and during the 40-day period, petitioners could have proceeded at the meeting at which four members of the Board were present. Petitioner Ursino requested a continuance apparently in the expectation that the appointment of a fifth member to the Board was imminent. That request was granted by the Board on motion of one of the commissioners. We may not fault petitioners for their desire to have five members acting on an appeal where the relief sought by petitioners required the vote of four members.

In summary we apprehend that the conclusion reached by us will obviate any frustration of the appellate process. Thus, although the Board may be composed of five members, the continued absence of two members during the 40-day limitation will not deny an appellant his right of appeal but the period during which the Board is impotent to act for lack of a quorum will be excluded from the computation of the 40-day limitation.

Let a peremptory writ of mandate issue directing respondent court to make its order that the Board proceed to hear and determine the appeal of petitioners at a hearing to be set, heard and determined within 19 days from the date of said order.

Sims, J., and Elkington, J., concurred.