[No. B006679. Second Dist., Div. One. July 17, 1985.]

HIGHLAND DEVELOPMENT COMPANY, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents; WHITLEY HEIGHTS CIVIC ASSOCIATION et al., Interveners and Respondents.

COUNSEL

Glickman & Glickman and David R. Glickman for Plaintiff and Appellant.

Gary R. Netzer and James K. Hahn, City Attorneys, Thomas C. Bonaventura, Senior Assistant City Attorney, and John F. Haggerty, Assistant City Attorney, for Defendants and Respondents.

Wyman, Bautzer, Rothman, Kuchel & Silbert, Karen S. Newman, Wallin, Kress, Reisman, Price & Dilkes, Robert L. Kress, Peter L. Wallin, C. Edward Dilkes and Cary S. Reisman for Interveners and Respondents.

## OPINION

LUCAS, J.—Highland Development Company (Highland) appeals from three orders partially determining cross-actions concerning its right to a permit for construction and use of a driveway providing access to an apartment project Highland is constructing in the Hollywood Hills. By these orders, the superior court (1) denied Highland's petition for writ of mandate to compel the City of Los Angeles (City) to reinstate the permit, which had been granted by the City's board of public works but was later revoked by the city council; (2) denied Highland's application for a preliminary injunction against the City's interfering with Highland's right of ingress via the driveway constructed pursuant to the permit; and (3) granted the request of intervener Whitley Heights Civic Association (WHCA) for a preliminary injunction barring Highland from utilizing the driveway and requiring Highland to block it from vehicular traverse. We have determined that the City acted unlawfully in revoking Highland's permit, because the city council lacked jurisdiction to overrule the board of public works' permit decision. Accordingly, we reverse the trial court's grant of injunctive relief against Highland and direct the issuance of a writ of mandate requiring the City to set aside its revocation of the driveway permit. In light of this disposition,

Highland's request for a preliminary injunction against City interference with its access rights becomes moot.

FACTS

Highland, a partnership consisting of a trust and 2 individuals, is in the process of constructing an 81-unit, multistory apartment building in the Hollywood Hills,[1] adjacent to Whitley Heights, a single-family residential neighborhood which has been designated an historic district by the U.S. Department of the Interior. Highland's project is bounded on the west by Highland Avenue and on the east by Las Palmas Avenue. Highland Avenue is a busy north-south thoroughfare, while Las Palmas is a narrower, two-lane street unabutted by sidewalks. Before commencing its apartment project, Highland originally had intended to construct a condominium project on the site; it abandoned that goal following a determination by the city planning department's advisory agency that Highland could not install a vehicular entrance to its project on the Las Palmas side. Highland's present project is funded in part by low- and middle-income housing bonds issued by the City.

In May of 1983 the City's department of engineering issued Highland a permit authorizing it to construct a driveway from Las Palmas Avenue providing access to and from the building's subterranean garage. A similar driveway also was authorized for the Highland Avenue side. The day after the Las Palmas permit was issued, the City's board of public works (Board) directed the city engineer to hold that permit in abeyance due to problems of congestion on Las Palmas. Thereafter the Board, to which the City's Municipal Code entrusts the function of issuing permits for construction of driveways over City streets (L.A. Mun. Code, § 62.105), held a public hearing to consider the advisability of the permit.

At the hearing, representatives of various City departments presented contrasting views on this subject: the department of transportation favored Las Palmas access but the police department opposed it. In addition, numerous spokesmen for elected officials and civic groups, including WHCA, testified in opposition to the permit. On July 1, 1983, the Board by a three-to-two vote adopted a compromise resolution instructing the city engineer to re-issue Highland a driveway permit for Las Palmas access, limited however to entering traffic only. This permit was formally issued on July 26, 1983. Immediately thereafter Highland poured and completed the concrete driveway, at a cost later estimated by a City inspector at $1,000.

---

[1] We summarize the facts as they appear in the record of proceedings below; WHCA's brief informs us that the apartment house in question has since been completed.

On July 8, 1983, WHCA, by letter from its attorneys, filed an "appeal" of the Board's decision with the city council. The matter first was considered by the council's public works committee on August 15. At the outset of the hearing the city engineer's office informed the committee that the driveway had already been installed, and a representative of the city attorney's office advised the council members that in his opinion the council lacked jurisdiction to revoke a driveway permit issued by the city engineer. The committee chair responded that even if this were so the committee intended to listen to presentations by the numerous citizens who had appeared at the hearing. After extensive testimony pro and con, the committee chair (Councilwoman Picus) commended WHCA's representatives and stated that she "refuse[d] to accept" the city attorney's advice that the council lacked jurisdiction, "because I will not sit here as a member of the governing body of the City of Los Angeles and allow what is an absolutely unreasonable decision to be made because I'm told that I haven't any power to do anything about it." The committee then adopted a report recommending to the council that Highland's permit be "rescinded and revoked" on the ground that the driveway location was unsafe, in that it posed danger to traffic and threatened to hamper access of City emergency vehicles to the site.

The city council considered this recommendation at a hearing held on August 30, 1983. During this hearing, two members of the city attorney's office again advised the council that in their opinion the council lacked jurisdiction to revoke the permit. Each stated, however, that in his view the issue was "arguable in a court of law." In response, various council members expressed differing legal-political views of the propriety of treading into this area in light of the legal advice given. Councilwoman Picus reiterated her previous "unwilling[ness] to accept the fact that as the governing body of the City" the council could not rectify what she perceived as a dangerous decision. In this resolve she was joined by Councilwoman Stevenson, the representative of the locale in which Highland's project and Whitley Heights are situated; she stated that "it is our duty to not sacrifice logic and understanding by holding onto some technical and literal interpretation of a Code when that is in conflict with the safety and the well-being of the citizens of our City . . . ." On the other side of the issue, Councilman Snyder vigorously expressed his conviction that Highland possessed a vested right in its permit and his concern that the council could subject the City to potential liability by taking an action that would be not only illegal but also, in his opinion, unsafe, given the possibility of accidents arising from uncontrolled left turns by autos forced to enter the garage from the southbound lanes of Highland Avenue. Councilman Yaroslavsky forthrightly explained that he intended to vote in accordance with the district member's (Steven-

son's) opposition to the permit, notwithstanding that council action thus taken might be illegal. He viewed such a vote as "a symbolic gesture hoping, wishing that the permit will be revoked even though we don't [have] the authority to do that and perhaps it's a signal to the Board of Public Works to do something along these lines if they cho[o]se to do so . . . ."[2] The council then voted, eight to four, to adopt the report of the public works committee, rescinding and revoking the permit.

The following day a report of the council's action was transmitted to the Board, with the request that it "reconside[r] its position" concerning the permit, "consistent with the Public Works Committee report . . . ." Upon receipt of this communication, the Board met and its chair opined that in light of the council's action the Board had three options: "(A) To move for reconsideration of [its] prior action; (B) [t]o instruct the City Engineer to comply with the Council instructions; and (C) [t]o request advice from the City Attorney regarding the legality of the Council action." After discussion of these options, the Board by a four-to-one vote decided "that the said [Council] communication be referred to the City Engineer for compliance pursuant to the order of the City Council." The city engineer thereupon notified Highland of the council's revocation of its driveway permit, and instructed Highland to restore the driveway approach, street, curb and gutter to their former condition within 21 days, absent which action the City would initiate legal proceedings to compel removal of the driveway.

In response to this notice Highland instituted the present action, against the City and certain of its officers and departments. Highland sought declaratory relief concerning the parties' rights in re the driveway permit; a writ of mandate requiring the City to set aside its revocation of the permit; and injunctive relief against the City's revoking the permit, interfering with Highland's right of ingress over the driveway, interfering with completion

---

[2]The following excerpts from the debate encapsulized above offer a provocative reflection of the administrative process that resulted in the present necessity for judicial review. Councilwoman Stevenson elicited applause from the public in attendance at the hearing when she concluded her remarks with the observation: "So I'm asking the Councilmembers to stand forward—stand up—we are the governing body of the City of Los Angeles. The City is still not run by the City Attorney's office. I'd just like you to remember that." In response, Councilman Snyder stated: "Well, it certainly isn't run by the City Attorney's Office although sometimes they, on occasion they wish that we would be more heedful of what they advise us and then later on we generally wish that we had been more heedful of what they advised us, when we go contrary to their advice. It's such things as this that it [sic] brought us into major judgments against the City of Los Angeles in the past. The same things such as this that have us in court now—when we are given advice by the City Attorney as to what our powers are and then we just simply overlook that because we want to be able to do something that we do not have the power to do . . . . It's not our business to violate the law."

of the apartment project, or "unreasonably withholding consent and approval of plaintiff's construction project to its eventual completion." Highland predicated its action on contentions that the City lacked authority to revoke the permit because Highland had achieved a vested right thereto and that in any event the city council had not been legally empowered to rescind or revoke the Board's grant of the permit.

Over Highland's objection, WHCA and its president, Brian Moore, were allowed to intervene in the case. They filed a complaint in intervention against Highland, alleging that its construction, maintenance and use of the driveway constituted an unfair business practice (Bus. & Prof. Code, § 17200 et seq.) and involved unlawful expenditures of public funds (Code Civ. Proc., § 526a). WHCA and Moore prayed for declaratory and injunctive relief enjoining Highland from maintaining the driveway and requiring that it be dismantled. WHCA also disputed Highland's claim of a vested right to its driveway construction on grounds the driveway had been unlawful *ab initio*.

On December 12, 1983, the superior court heard and determined Highland's petition for writ of mandate and application for a preliminary injunction against the City, together with WHCA's like application for relief against Highland. On the question of vested rights, the parties presented conflicting evidence concerning the nature and extent of Highland's construction activities before and after issuance of its permit in July; the court then ruled that the extent of expenditures and construction activity undertaken in reliance upon the driveway permit was insufficient to establish a vested right. The court further rejected Highland's contention as to the absence of city council authority to revoke the permit, stating that "the City Council is the ultimate authority of the City [and] [i]f the administrative agency of the City had the authority, certainly the City Council has the authority." Holding finally that the City had not abused its discretion in revoking Highland's permit, the court entered judgment denying the petition for writ of mandate, and made a separate order simultaneously denying Highland's application for preliminary injunction and granting WHCA an injunction requiring that, pending trial of the action, Highland refrain from utilizing or allowing use of the Las Palmas driveway and take affirmative action to block it by installation of a locked chain. Highland then filed this appeal.

### DISCUSSION

Although Highland has adduced a host of factual and legal contentions in ostensible support of its claimed right to restoration of its driveway permit

and the access authorized thereby, we need treat only a few. After initially addressing jurisdictional questions concerning the amenability of this appeal, we hold that, contrary to Highland's assertions, WHCA and its president properly were allowed to intervene in the action. We further find correct Highland's contention, foreshadowed by the city attorney's advice to the city council below, that the council lacked authority to revoke the driveway permit, because the City's municipal code empowers only the Board, not the council, to determine whether permits of the variety here involved shall issue. Finally, while we reject Highland's generalized claim that it possesses an inherent right to access to its property through the driveway in question, we also disapprove the premises of the trial court's determination—and the City's and WHCA's arguments—that Highland could not have achieved a constitutional vested right to the driveway permit, thus framing guidance on that question should the Board contemplate further reconsideration of the permit.

### 1. *Jurisdiction Over the Appeal.*

Preliminarily, we address certain questions concerning the jurisdictional amenability of Highland's appeal which have arisen from WHCA's contentions and our review of the record.

The trial court's orders respectively granting and denying WHCA's and Highland's applications for preliminary injunction are clearly appealable. (Code Civ. Proc., § 904.1, subd. (f).) WHCA's contention that the propriety of the order granting it intervention may not be reviewed in advance of final judgment is consequently unsound: although an order allowing intervention is an intermediate disposition which is not independently appealable, in this case it may be reviewed in connection with the appealable order granting WHCA an injunction, given that the former order intimately affected the issuance of the latter. (Code Civ. Proc., § 906; *Taylor* v. *Western States L. & M. Co.* (1944) 63 Cal.App.2d 401, 403 [147 P.2d 36].)

A more serious question of appellate jurisdiction is presented by the trial court's separate judgment denying Highland's petition for writ of mandate. The court entered this judgment as "a separate and final judgment regarding the Petition for Writ of Mandate, included as part of plaintiffs' [*sic*] Complaint filed in this action"; it did so on the expressed premise that "[t]hese really are separate types of causes of action and probably should not have been incorporated within the same action." Since a final judgment fully determining Highland's causes of action for declaratory and injunctive relief has not yet been rendered—indeed, those matters have not yet been tried—the separate judgment on the mandate cause of action at first blush

appears premature and not subject to review, by virtue of the one final judgment rule. (See generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 47, pp. 4060-4062.)

The trial court's belief that a petition for writ of mandate may not properly be joined with causes of action for declaratory and injunctive relief was technically incorrect (Code Civ. Proc., § 427.10, subd. (a); see, e.g., *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281]), and did not furnish a sufficient basis for interlocutory rendition of a separate judgment on the former claim for relief. However, in recent years "the number of existing exceptions" to the one final judgment rule has been augmented so that "separate appealable judgments may be rendered on counts that present separate claims for relief," where the trial court has severed such causes of action from those remaining to be tried. (*Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401, 418 [123 Cal.Rptr. 669].) In the present case, the trial court's separate consideration of the full merits of the cause of action for writ of mandate, and the court's expression of determination to treat that claim independently of the other causes of action remaining to be tried, together indicate at least a de facto severance, much as was perceived in the *Schonfeld* case. (See *id.*, at p. 416, fn. 14.) Accordingly, the judgment denying a writ of mandate is appealable. (*Id.*, at p. 419.)

### 2. *Propriety of Intervention.*

■ Highland mounts an initial, procedural challenge to the trial court's grant of injunctive relief in favor of WHCA and its president, Moore, alleging that those parties should not have been granted leave to intervene in Highland's suit against the City. Highland contends that interveners' interest in the subject matter of the litigation was too remote to give them standing to intervene, and that allowing their intervention has improperly wrested control of the lawsuit from Highland, the original plaintiff. We disagree.

With respect to WHCA, we perceive two independently sufficient bases on which the grant of leave to intervene was entirely proper. First, the facts of record demonstrate that WHCA is an association of homeowners who reside in an historic district directly abutting upon Highland's project and who share continuous usage of north Las Palmas Avenue. The contiguous neighborhood relationship of WHCA's members and Highland's property, which is subject to a land use permit to which they object, brings WHCA directly within the ambit of Code of Civil Procedure section 387, subdivision (a)'s provisions for permissive intervention. (*Weiner* v. *City of Los Angeles* (1968) 68 Cal.2d 697, 706 [68 Cal.Rptr. 733, 441 P.2d 293].)

Second, WHCA was the petitioning party before the city council who instituted and led the administrative challenge to Highland's permit which this litigation contests. As such, WHCA was entitled to be named as a real party in interest in Highland's petition for writ of mandate, and in fact occupied the status of an "indispensable party" to the mandate proceeding under Code of Civil Procedure section 389. (*Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611, 616-617 [114 Cal.Rptr. 404]; see also *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 501-502 [157 Cal.Rptr. 190].) WHCA qualified as such a party under section 389, subdivision (a)'s provision for compulsory joinder of a person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . ." (*Ursino* v. *Superior Court, supra,* 39 Cal.App.3d at pp. 616-617.) It would be strange indeed if a party that section 389 thus *requires* be joined in a lawsuit were to lack standing to intervene therein. And in fact quite the opposite is true: subdivision (b) of section 387 makes a grant of intervention to a party described in the quoted portion of section 389 mandatory, upon timely application (unless the party's interest is already adequately represented). Accordingly, far from being improper, WHCA's intervention was legally compelled.

The entitlement of WHCA's president Moore to intervene below is not as distinctly clear. Moore sought to prosecute one cause of action of the complaint in intervention solely, as a taxpayer complaining of a waste of City funds under Code of Civil Procedure section 526a.[3] This qualification for Moore's independent cause of action did not by itself entitle him to assert that claim by intervening in Highland's action. However, Moore also alleged in his complaint that he resided within Whitley Heights, had personally appeared before the Board and the city council in opposition to Highland's permit, and was bringing the complaint in intervention under authorization of WHCA. These facts—particularly the former two—sufficed to bring Moore within the ambit of the trial court's discretion (see *People* ex rel. *Rominger* v. *County of Trinity* (1983) 147 Cal.App.3d 655, 660 [195 Cal.Rptr. 186]) to allow him intervention.

3. *Administrative Authority Over Driveway Permits.*

As recited above, throughout the proceedings before the city council and its public works committee the city attorney's office advised the members of the council that they did not have legal authority to overrule the Board's grant of a driveway permit to Highland. Apparently expecting a judicial

---

[3]As noted previously, Highland's apartment project is funded by City revenue bonds.

challenge, the council nonetheless overrode this advice and proceeded to vote to revoke the permit. The trial court ultimately agreed with the position of the council majority that as "the ultimate authority of the City" the council was empowered to overturn the Board's grant of a permit to construct a driveway over city rights-of-way.

■ The City and WHCA have cited to us numerous provisions of both City and state law which they contend confirm the trial court's decision and validate the council's questioned exercise of jurisdiction. We find, however, that none of these provisions carries the import thus ascribed to it. Rather, careful scrutiny of the City's charter and ordinances reveals that authority to grant or deny a permit of the type involved in this case has been confided exclusively to the Board, and that no provision of law authorizes the council to act as an appellate body reviewing and overruling the Board's issuance of such a permit. Accordingly, we conclude—as did the City's lawyers in the first instance—that the council's decision revoking Highland's permit was made without jurisdiction, and it therefore must be set aside.

We consider first the City's charter, the organic law which establishes both the city council (L.A. City Charter, §§ 5, 20) and the Board (*id.*, § 230). Two provisions set forth the functions of each body in connection with the improvement of City streets. Section 37 of the charter grants the council "the power to provide for any or all of the following improvements, to-wit: The establishing . . . of streets . . .; the construction or reconstruction or improvement or reimprovement or repairing . . . of streets . . .; and the construction or reconstruction or repair in, under, over or through any street . . . ." On the other hand, section 234 provides (in part) that "[t]he Board of Public Works shall have charge, superintendence and control, except as otherwise specifically provided in this charter . . . [o]f the construction and maintenance of all streets and other places and property enumerated in Subdivision 1 of Section 233 of this charter [which include 'avenues, alleys, lanes, boulevards, crossings, . . . and . . . rights-of-way and property belonging to the city']; [and] [o]f all work and improvement in, on, over or under all such streets, places and property; . . . provided, that nothing in this section shall be construed to abridge the power of the Council to order any work or improvements and to provide the manner of paying therefor, such work or improvement, however, to be done under the superintendence and control of the Board of Public Works."

We do not discern in these charter provisions a clear, preemptive restriction of the power to grant or issue permits for private construction of driveways across City rights of way to either body. On the one hand, it could be contended that under section 37 such construction constitutes "construction

. . . over . . . [a] street," and thus is subject to the council's power to provide (or not to provide) therefor. On the other hand, the Board's plenary "charge, superintendence and control . . . [o]f all work and improvement . . . on [or] over . . . all . . . streets," under section 234, could be asserted to comprehend that permit function.[4] In short, as the parties acknowledged at oral argument, the charter is facially ambiguous and inconclusive concerning the respective powers of the city council and board of public works over permits such as that at issue here.

However, the council itself has clarified this ambiguity by more precise legislation. Los Angeles Municipal Code section 62.105, subdivision (a) places the function of granting permits for private driveway construction squarely with the Board. The ordinance provides: "No person shall lay, construct, reconstruct or repair in any street or in, over or through any property or right of way owned by or under the control of the City, any curb, sidewalk, gutter, *driveway,* approach, roadway surface, pavement, sanitary sewer, sewage works, storm drain, culvert, stairway, retaining wall or similar structure, building or improvement, or perform any grading or filling, or subject any sewer or storm drain to excessive live or dead loading without first obtaining written *permit therefor from the Board* and without first obtaining approval of plans and specifications and the lines and grades therefor from the City Engineer." (Italics added.) Thus, the authority to grant and issue driveway permits is confided to the Board, with a correlative function of approving plans and specifications vested in the city engineer, an officer in the department of public works (L.A. City Charter, § 232).

Nowhere in section 62.105 or the Municipal Code at large is there any provision for appellate review of the Board's decisions concerning such permits by the city council. By contrast, where the council has deemed it expedient to allow such review of administrative decisions it has so provided unequivocally. For example, Municipal Code section 12.37, subdivision I specifies a procedure for appeal to the council from the city engineer's determinations concerning street improvements required to be made when certain structures are erected. Under this state of the City's law, the council simply is not empowered to sit, as it did here, as an appellate administrative tribunal for purposes of reviewing and reversing the Board's decisions granting driveway permits.[5]

---

[4] Furthermore, it is questionable whether Highland's driveway, privately constructed for the purpose of affording access to Highland's own project, constituted a *public* improvement such as section 37 empowers the council to ordain.

[5] WHCA has cited *Cake* v. *City of Los Angeles* (1913) 164 Cal. 705, 710 [130 P. 723] and *Howard Park Co.* v. *City of L.A.* (1953) 119 Cal.App.2d 515, 521-522 [259 P.2d 977], as allegedly confirming city council authority to review decisions of the Board. These cases

The City's and WHCA's attempts to justify the council's ad hoc deviation from the legislative scheme it enacted are unconvincing. WHCA first cites *In re Montgomery* (1912) 163 Cal. 457 [125 P. 1070], for the proposition that a city charter may not limit a city in the exercise of its police power. *Montgomery,* however, explicitly distinguishes this general truism about restricting the scope of the police power from the equally established proposition that a charter (or other valid city law) *may* "lodg[e]" a particular municipal function in one department or agency, to the exclusion of others. (*Id.,* at pp. 459-460.) Similarly, the leading case WHCA cites concerning unlawful delegation of legislative power—which is not here present[6]—itself proclaims that "[w]hen the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization." (*Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 24 [132 Cal.Rptr. 668, 553 P.2d 1140].) And, contrary to WHCA's claim, this rule may operate to disqualify not only a subordinate agency but also a local legislative body from interference with functions elsewhere vested. (See, e.g., *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403].)

WHCA and the City also point to provisions of the City's charter expounding the City's broad power over municipal health, safety, and welfare, and to section 35 of the charter, which states that "[e]xcept as otherwise in this charter specifically provided, the Council shall have full power to pass ordinances upon any subject of municipal control, or to carry into effect any of the powers of the city." However, this plenary power has already been exercised, in the case of driveway permits, by enactment of section 62.105. Having thereby entrusted the function of granting such permits to the Board, the city council is not free to deviate from this legislative scheme and purport to exercise "supreme authority" willy-nilly. To allow otherwise would make a travesty of the rule that governmental entities must abide by the law.

In short, while the Los Angeles City Charter does grant the council broad powers, including "[a]ll legislative power of the city" (L.A. City Charter,

---

involved municipal assessments for public improvements undertaken pursuant to the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.) and a similar, predecessor statute. The Improvement Act specifically provides for appellate review of such assessments by the local legislative body. (*Id.,* §§ 5003, 5220 et seq.) The instant permit proceedings did not arise under that act, and hence the cited cases are not relevant.

[6]Assuming that the permit authority "delegated" to the Board by Municipal Code section 62.105 is legislative in nature, it is accompanied by a wealth of detailed standards and specifications enacted by the council to guide and govern the Board in its application. (See L.A. Mun. Code, § 62.105.1 et seq.)

§ 21), that power must be "exercised by ordinance" (*ibid.*) and in accordance with duly enacted procedural restraints. Assuming such constitutional restrictions as the vested rights doctrine did not require otherwise, the council in the exercise of its legislative power might have chosen to enact regulations, in response to a perceived traffic problem on Las Palmas Avenue, that would interdict construction or operation of a driveway such as Highland's. But here the council did not so act. Instead, it purported to sit as a quasi-adjudicative appellate body, reviewing a particular Board decision to grant and issue a driveway permit. With section 62.105 of the Municipal Code in force as presently written, the council was unauthorized to assume that function.[7]

Relying upon the previously quoted proviso of charter section 234 to the effect that nothing in that section's reservation of power to the Board "shall be construed to abridge the power of the Council to order any work or improvements and to provide the manner of paying therefor," the City suggests—with appropriate caution—that "[t]he [instant] revocation of [Highland's] driveway permit, and the restoration of the street, curb, and gutter, as a result thereof, as was [*sic*] required by the City Engineer . . . would arguably be the exercise by the Council of the power to order a work or improvement of public property." We disagree. The council clearly undertook its revocation of Highland's permit as an exercise of the police power to withdraw a license, not a directive for public improvement of the subject driveway area. Moreover, the council ordered only the permit revocation, not the restoration of the street.

In a final, fall-back argument, the City argues that "even if jurisdiction was solely in the Board of Public Works the Board exercised that power on September 2, 1983, when it instructed the City Engineer to comply with the order of the Council." This assertion mischaracterizes the Board's ultimate action. It will be recalled that on September 2 the Board reconvened to consider Councilwoman Stevenson's transmittal of the council's determination and her request that the Board "reconsider" its grant of the permit

---

[7] WHCA argues that the council was authorized to revoke Highland's permit by Municipal Code section 80.36.9, subdivision (A), which provides that "Whenever the City Council determines by order or resolution that it is necessary to regulate or prohibit the assemblage or procession of vehicles on a highway, street, or public way, or any portion thereof in order to prevent traffic congestion, injury to persons or property or to otherwise preserve the public peace, health or safety, it may in that action also authorize and direct the Department [of Transportation] and/or the Police Department to close any highway, street, or public way, or any portion thereof for the time and distance necessary for that purpose . . . ." This contention is specious. The council neither purported to exercise the discrete powers conferred by this section—to close streets, not prohibit driveways from being maintained—nor did so: i.e., there was no direction made to either the department of transportation or the police department, only a communication of the council's action to the Board.

in accordance therewith. At that point the chair of the Board suggested that it had three options: to reconsider the permit itself, to direct the city engineer to comply with the council's directive, or to solicit the city attorney's advice as to the council's jurisdiction over the matter. The Board chose the second option, and the notice of revocation of Highland's permit that the city engineer thereafter issued directly implemented the council's unauthorized action, without any intervening independent redetermination by the Board. Thus, the exercise of city power of which Highland complains emanated directly from the council. Because the council was not authorized to revoke the permit, the revocation must be set aside, and the trial court should have granted Highland's petition for a writ of mandate so requiring.[8]

### 4. *Vested Rights.*

In addition to its claim that the council lacked jurisdiction to revoke the permit—which we have just sustained—Highland has contended throughout this litigation that it possesses a vested right to its permit by virtue of having undertaken substantial construction expenditures in reliance thereon. We address certain aspects of this vested rights question, in order to guide the parties and the trial court against the possibility that the Board might consider independent revocation of its permit decision, either in response to the city council's "message" in *its* decision of revocation or upon renewed petition by WHCA. As we will explain, the trial court's rejection of Highland's vested rights contention involved a mistaken application of the governing legal principles to the facts of this case. Moreover, WHCA's contention that Highland is foreclosed from vested rights because it did not show good faith reliance on a valid permit is infirm. Although the posture of this case does not require or allow our sustaining the vested rights claim on appeal as a matter of law, there appears substantial support for Highland's assertion that it possesses a vested right to its permit, which would preclude the Board from now revoking it.

Initially, we observe that Highland cannot properly claim an inherent property right to access to Las Palmas Avenue. As explained in *Delta*

---

[8]Here and below, Highland characterized its petition for writ of mandate as brought under Code of Civil Procedure section 1094.5. That provision for "administrative mandamus" applies to judicial review of administrative action taken "as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer . . . ." (*Id.*, subd. (a).) Although permit decisions by the Board may fall within this class of administrative decisions (see Cal. Administrative Mandamus (Cont.Ed.Bar 1966) p. 398), the council's decision of revocation, which was entirely unauthorized by law, did not, and section 1094.5 accordingly did not apply. However, a "traditional" writ of mandate under Code of Civil Procedure section 1085 was and is available, through Highland's petition, to correct the council's unauthorized action.

*Rent-A-Car Systems, Inc.* v. *City of Beverly Hills* (1969) 1 Cal.App.3d 781, 786 [82 Cal.Rptr. 318], a property owner's rights include entitlement to no more or less than reasonable and convenient access between the property and the highway. The City's allowance of an ingress-egress route between Highland's property and Highland Avenue satisfied that requirement. Indeed, Highland does not go so far as to complain about the Board's limitation of Las Palmas access to ingress only, which imposes a genuine restriction of access *to* that street.

Insofar as this right of way for ingress allowed by the Board's driveway permit is concerned, Highland presents a more serious claim of entitlement based upon the doctrine of vested rights. ▇ That doctrine, legally grounded in the constitutional protection of property from deprivation without due process of law or just compensation, and functionally defined by elements akin to those of estoppel, provides that where a permittee in good faith has undertaken substantial construction and incurred substantial liabilities in reliance upon a permit, its right to the permit and to the use authorized thereby becomes immunized from impairment or revocation by subsequent governmental regulations. (E.g., *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546]; *Griffin* v. *County of Marin* (1958) 157 Cal.App.2d 507, 511-513 [321 P.2d 148].) This rule is subject, however, to the qualification that such a vested right, while immune from divestment through ordinary police power regulations, may be impaired or revoked if the use authorized or conducted thereunder constitutes a menace to the public health and safety or a public nuisance. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 80 [101 Cal.Rptr. 768, 496 P.2d 840]; *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 158-159 [96 Cal.Rptr. 484].)

▇ In this case the attention of both the parties and the trial court was misdirected by Highland's insistent argument that several hundred thousand dollars of expenditures it had made to outfit the garage served by its driveway should be considered in the "reliance" scale when assessing the vested rights claim. Highland concurrently contended that a vested right to maintain the driveway derived from Highland's building permit, together with other antecedent decisions the City had made in approving the apartment project. Both contentions were erroneous: the permit about which Highland complains is the driveway permit; only that permit constituted definitive governmental approval for the driveway; and only construction and expenditures undertaken in reliance upon that permit were worthy of consideration in assessing whether a vested right had arisen. (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d at p. 793; cf.

*Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255, 264-266 [53 Cal.Rptr. 7] (holder of grading permit and vested right thereto did not have a vested right to construct a building by virtue of the former permit and expenditures under it).)

The trial court thus correctly rejected Highland's arguments about approvals and expenditures made before the July 26, 1983, issuance of the driveway permit. But the court then held that Highland's showing of expenditures and activities in reliance on *that* permit—certainly not the $200,000 Highland claimed—was too insignificant to give rise to a vested right. Here we think the court erred. Highland's declarations[9] by its partner Barry Baron (an engineer formerly employed by the City's department of public works) stated that "the actual driveway approach"—i.e., the portion of the driveway traversing the public right of way, from the curb to the property line (L.A. Mun. Code, § 62.00), construction of which required the permit under Municipal Code section 62.105—had been inspected and poured in concrete after issuance of the driveway permit. This was confirmed by a declaration of a City inspector, who testified that he had approved the forms on July 27 and had inspected the finished concrete surface the following day. The inspector also testified that the cost of the driveway approach construction was approximately $1,000. While this was a small percentage of the expenditures Highland claimed should be attributed to the driveway for vested rights purposes, the extent of work thus done was extremely substantial in relation to the scope of construction contemplated and authorized by the permit in question. We have no hesitation in saying that such work and expenditures, even if small in absolute terms, could constitute substantial reliance sufficient to create a vested right in the driveway permit.[10]

WHCA presents two arguments in opposition to Highland's vested rights claim which are essentially legal and therefore deserve resolution now. Closely interrelated, the arguments are that Highland could not claim a

---

[9]The City argues that Highland did not show substantial evidence of a vested right in the administrative record, and hence that the trial court was correct. However, this was not an "administrative mandamus" case, to be decided by assessment of the administrative record. (See fn. 8, *ante.*) Rather, the question of vested rights was tendered by testimony in the form of declarations, and it was the substantiality of that evidence that the trial court was called upon to assess. The reporter's transcript shows that the trial court understood this.

[10]WHCA also presented declarations, some of which stated that construction of the driveway had commenced before the permit issued. We do not undertake to weigh all of the evidence concerning Highland's construction activities, both because that is not our function and because decision of this appeal does not require it. Necessary and sufficient instruction appears from our observation that Highland's evidence of reliance on its permit, if not refuted, would establish a vested right.

vested right because (1) its permit was void *ab initio* and (2) because any reliance it showed was not taken in good faith. Both contentions depend heavily on the premise that the permit the Board granted was not final because subject to reconsideration by the city council. In light of our holding above that the council lacked jurisdiction to revoke the permit, that premise is baseless. Similarly, WHCA's argument that Highland's spirited conduct of its construction activities after July 26 bespeaks a bad faith effort to present the City with a "fait accompli" (cf. *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 548-549 [122 Cal.Rptr. 315]) also is unpersuasive: having endured persistent and threatening administrative delays, Highland was entitled, once armed with a final permit, to proceed aggressively in reliance thereon.

Finally, the City argues that even if Highland had achieved a vested right in its permit, revocation of the permit was permissible under the exception to the vested rights doctrine, noted above, that applies in cases of land uses constituting a public nuisance or other menace to public health and safety. Because the instant permit revocation must be set aside for other, jurisdictional reasons, and because this question was not addressed below, we need not resolve it for the first time here. However, we do note that the "nuisance" exception to the vested rights doctrine must be carefully applied, lest it impermissibly swallow up the constitutional protections that doctrine provides.[11]

Here, the evidence before the Board and the city council concerning the possible hazards of Highland's driveway diverged; as noted earlier, although the public works committee reported that ingress from Las Palmas Avenue would pose a danger to traffic and was "unreasonable" in light of the availability of access from Highland Avenue, the department of transportation felt that to rely upon Highland Avenue alone would itself pose an intolerable traffic burden. Moreover, the Board, after hearing even more evidence on the question than did the council, narrowly approved the entrance driveway. Whether the Board now could find that Highland's driveway constitutes a menace to the public safety is a difficult question which we need not resolve. But it does appear from the record that only upon a considered and valid determination to this effect could Highland's permit now be restricted.

---

[11]In another context, our Supreme Court has contrasted the varying police power concerns which support zoning restrictions in general but which may not override vested rights with the narrower range of public wrongs which may be corrected under municipal nuisance abatement authority. (*Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [295 P. 14].)

## 5. *Entitlement to Relief.*

Our determination that the City's revocation of Highland's driveway permit was rendered in excess of jurisdiction requires that the order granting WHCA a preliminary injunction against operation of the driveway be reversed, and that the judgment denying Highland's petition for writ of mandate also be reversed, with directions to grant the writ. We stop short, however, of reversing the order denying Highland's application for preliminary injunction. Such alternative relief against the City's revocation is unnecessary in light of our decision concerning the petition for writ; moreover, insofar as it prayed for a preliminary injunction against the City's "interfering with completion of [Highland's] construction under plaintiff's lawfully secured permits and from unreasonably withholding consent and approval of plaintiff's construction project to its eventual completion," Highland made no showing of threatened interference by the City, or of other entitlement to such relief.

### DISPOSITION

The order denying plaintiff a preliminary injunction is affirmed. The order granting interveners a preliminary injunction is reversed. The judgment denying the petition for writ of mandate is reversed and the matter is remanded with directions to enter judgment granting a writ of mandate requiring the City to set aside its revocation of plaintiff's permit. Plaintiff shall recover its costs of appeal in equal shares from defendants and interveners.

Spencer, P. J., and Dalsimer, J.,* concurred.

The petitions of defendants and respondents and interveners and respondents for review by the Supreme Court were denied October 3, 1985.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.