[Civ. No. 57460. Second Dist., Div. Two. Feb. 13, 1980.]

CALIFORNIA PHYSICIANS' SERVICE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
WANDA GILMORE et al., Real Parties in Interest.

92

**COUNSEL**

Morris & Polich, Merril K. Albert, Landon Morris and Robert S. Wolfe for Petitioners.

No appearance for Respondent.

Thon & Matz, Jeffrey A. Matz, Home & Clifford, Horvitz, Greines & Poster, Irving H. Greines, Barry R. Levy, Alan L. Rushfeldt, Kermit J. Morgan, Cyril E. Armbrister, Jr., Kirtland, Darby & Hager, Ronald B. Hager, Omansky, Lyden & Lazarus, Alfred W. Omansky, Grace, Neumeyer & Otto, Thomas W. Ely, Sroloff & Biren, Ernest Sroloff, Morgan, Wenzel & McNicholas, John D. Dwyer and Darryl L. Dmytriw for Real Parties in Interest.

## OPINION

**COMPTON, J.**—California Physicians' Service (CPS) seeks to intervene in a personal injury action brought by one of its subscribers, Wanda Gilmore,[1] against several doctors, a hospital and various manufacturers, suppliers and operators of hospital respiratory equipment.

The superior court refused to permit intervention. On petition of CPS, we granted an alternative writ because it appeared to us that the circumstances of the case were unique and the remedy of appeal inadequate.

We were provided with extensive briefing and oral argument by counsel for CPS, the hospital and the equipment manufacturer. Counsel for the Gilmores and other real parties in interest elected not to respond to the petition. We have concluded that the trial court properly refused to permit CPS to intervene and thus the petition for the peremptory writ must be denied.

In 1976, Wanda Gilmore underwent surgery for a hysterectomy. As a result of complications and alleged negligence in her post operative care, including the use of certain respiratory equipment, she is permanently disabled. The damages are extensive. CPS has provided hospital and medical benefits of approximately $500,000.

The master contract between CPS and its subscribers provides that in the event that the need for medical benefits results from the actions of a

---

[1] Wanda is acting through her husband as guardian ad litem. The husband, Robert, is named as a plaintiff on his own behalf.

third party tortfeasor, the subscriber is required to provide CPS with a lien on any recovery and to reimburse CPS therefrom.

During the period that CPS was providing benefits a dispute arose between it and the Gilmores over the extent of the coverage to which Wanda was entitled. CPS continued to provide the disputed coverage, partly because of its concern that a claim of bad faith might be leveled against it, but primarily because in a separately written compromise agreement executed by the Gilmores they agreed to make a good faith effort to recover the costs of the medical benefits in the personal injury action which was then pending. This agreement was executed in November of 1977.

In July of 1979, the Gilmores notified CPS that they were repudiating the agreement. They simultaneously filed a motion in their pending action seeking (1) approval of a settlement with one of the defendants —Para-Medics, Inc.—for $200,000, the limit of that defendant's liability coverage; (2) approval of a settlement with one of the doctors for $500,000, also the limit of the doctor's liability coverage; and (3) a declaration that "all medical liens" are null and void. CPS promptly filed a motion for leave to intervene.

At the hearing on the motion, the trial judge first approved the Para-Medics' settlement. He then found that Para-Medics was a "health care provider" under the terms of Civil Code section 3333.1[2] and thus that CPS was not entitled to any of the proceeds.

---

[2]Civil Code section 3333.1 provides: "(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.

"(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant.

"(c) For the purposes of this section: (1) 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing

The hearing on the approval of the settlement with the doctor was continued for reasons unrelated to these proceedings. The motion to intervene was then denied.

By these writ proceedings, CPS seeks (1) vacation of the order which purports to deny its claim to any of the proceeds of the settlement with Para-Medics, Inc., and (2) permission to intervene in the action.

CPS's claim to reimbursement rests on its contracts with the Gilmores. It has no independent claim against any of the real parties in interest in the pending action. Its goal simply is to preserve its ability to recoup from any sums recovered by the Gilmores.

Prior to amendments in 1977, Code of Civil Procedure section 387 provided that "[a]t any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, *may* intervene...." (Italics added.)

Case law applying that statute developed the principle that intervention was largely in the discretion of the trial court to be exercised according to the facts of the particular case. (*Beshara* v. *Goldberg* (1963) 221 Cal.App.2d 392 [34 Cal.Rptr. 501]; *Isaacs* v. *Jones* (1898) 121 Cal. 257 [53 P. 793].)

Reported decisions which deal with the exercise of that discretion further refine the principle to provide that the intervener's interest in the litigation must be direct and immediate rather than consequential, the issues must not be enlarged by the intervention and the reasons for intervention must outweigh the rights of the original parties to litigate in their own way. (*Fireman's Fund Ins. Co.* v. *Gerlach* (1976) 56 Cal. App.3d 299 [128 Cal.Rptr. 396].)

One cardinal rule which is established by the cases is that an intervener's interest must be more direct and immediate than that of a

---

with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider; (2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

simple creditor of one of the parties. (See *Fireman's Fund Ins. Co.* v. *Gerlach, supra.*)

Code of Civil Procedure section 387 was, as noted, amended in 1977. The effect of that amendment was to retain a permissive intervention couched in the almost identical language of the former statute and to create a *right* to intervene for persons who, inter alia, claim an interest relating to the *property or transaction which is the subject of the action,* when disposition of the action may impede or impair that interest.

CPS admits that its intervention in this matter would expand the issues in litigation and impinge on the right of the original parties to litigate the matter in their own fashion. Hence, as pertains to the issue of permissive intervention, CPS would be hard put to argue that the trial court was guilty of an abuse of discretion, even were we to conclude that CPS's interest in the litigation was direct and immediate.

■ The issue then is whether, under the facts, CPS meets the qualifications for mandatory intervention. If so, the fact that such intervention would add to the complexity of the action, create delay or adversely affect the original parties is of no moment.

There appears to be a dearth of case law interpreting the mandatory provisions of Code of Civil Procedure section 387, subdivision (b). CPS, of course, has an interest in the outcome of the litigation and the success of one of the parties. The critical phrase in section 387, subdivision (b) is "the property or transaction which is the subject of the action."

We think it evident that there is no "property" which is the subject of the pending action. A cause of action in tort would not qualify as "property" in this context.

As to "transaction," Black's Law Dictionary defines the term as: "Act of transacting or conducting any business; negotiation, management; proceeding; that which is done; an affair. It may involve selling, leasing, borrowing, mortgaging or lending. *Something which has taken place, whereby a cause of action has arisen.*" (Black's Law Dict., p. 1341, col. 1; italics added.)

While CPS's claim is based on a contract or "transaction" with the Gilmores, that contract or "transaction" is not the subject of the litiga-

tion in which CPS seeks to intervene. The "transaction" being litigated is the alleged tortious conduct of the real parties in interest and the injury to Wanda. CPS does not have, nor could it have, an interest in the Gilmores' cause of action in tort. (*Block* v. *Cal. Physicians' Service* (1966) 244 Cal.App.2d 266 [53 Cal.Rptr. 51]; *Lee* v. *State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458 [129 Cal.Rptr. 271].) It only has an interest in any recovery.

In our view, CPS, at best, is simply a creditor of the Gilmores. Its right to recover would only arise if and when the Gilmores obtain reimbursement from the real parties in interest for *medical expenses*. We emphasize the term *medical expenses* because that is the clear intent of CPS's contract with the Gilmores and as we will discuss, *infra,* the difference between general and special damages is significant in addressing CPS's contention concerning the effect of Civil Code section 3333.1.

Civil Code section 3333.1 was enacted as part of a legislative response to a perceived "crisis" in the field of medical malpractice insurance coverage. The first and most obvious objective of that statute, as addressed by subdivision (a) thereof, was to eliminate so-called "double recovery" of special damages in medical malpractice cases, the presumption being that the trier of fact would not include in the verdict amounts reimbursed by a collateral source. The obvious purpose of the reimbursement feature of the CPS master contract was also to eliminate double recovery of amounts attributable to medical and hospital costs.

The second and more controversial objective of the statute, as addressed by subdivision (b), is to shift the cost of the special damages for medical treatment from the malpractice insurance carriers to the providers of medical and hospital insurance, leaving to the malpractice insurance carriers the cost of general damages. (See Civ. Code, § 3333.2.)

The impact of this statute raises a number of unanswered questions, both substantive and procedural. It is for this reason that CPS claims that its interest in the litigation is direct and immediate and justifies its intervention. One of those questions is of course whether the separate agreement with the Gilmores places CPS in a position, vis-à-vis the Gilmores, which is outside the ambit of section 3333.1. Another question is

whether the statute operates in settlement proceedings or only where the case goes to trial. The overriding question is, of course, the constitutionality of the statute itself.

Here the trial judge purported to apply the statute to the settlement with Para-Medics, Inc. by finding that the latter was a "health care provider." Implicit in the judge's order is the further finding that the $200,000 figure was for general damages and did not contain any amount for special damages for medical expenses.

The effect of the operation of Civil Code section 3333.1 on the ability of medical and hospital benefit providers to seek reimbursement obviously depends on certain factual determinations which will be made in each case. The "binding" effect of those determinations on insurance carriers that would not normally be parties to the action is another as yet unanswered question. In these proceedings we need only address one of the questions raised by that statute, i.e., its effect on the right of CPS to intervene.

Real parties in interest concede that CPS has the right to litigate its claim to reimbursement under either the master contract or the individual contract with the Gilmores. Since CPS is not a party to the action, real parties concede that it is not "bound" by the trial court order which purported to foreclose its claim to the proceeds of the settlement with Para-Medics, Inc.

The issue is thus reduced to the question of what form and in what manner CPS may press its claim and litigate the issues raised by Civil Code section 3333.1. CPS has at all times had available the remedy of a separate action against the Gilmores to enforce the provisions of either its master contract or its separate contract with them. CPS's right to recover in such action, however, was and remains contingent on the Gilmores' recovery.

We conclude that the mere possibility that Civil Code section 3333.1 may be invoked in any litigation does not give the medical benefit provider, such as CPS, an interest in the matter being litigated so as to bring it within the ambit of the mandatory intervention provisions of section 387, subdivision (b) of the Code of Civil Procedure. If this case had proceeded to trial against all of the real parties in interest, CPS would not have been entitled to intervene merely because of the possibility that Civil Code section 3333.1 would be invoked.

Further, we hold that neither the circumstances of the separate agreement with the Gilmores nor the fact that the Gilmores have indicated a willingness to settle with certain of the real parties in interest, creates any additional basis for intervention. CPS must pursue its claim in a separate action.

The alternative writ is discharged and the peremptory writ is denied.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied March 5, 1980, and petitioners' application for a hearing by the Supreme Court was denied April 10, 1980.