[No. B171650. Second Dist., Div. One. Apr. 25, 2005.]

CITY OF MALIBU et al., Plaintiffs, v.
CALIFORNIA COASTAL COMMISSION et al., Defendants and
Respondents;
JOHN M. HEIDT, as Trustee, etc., et al., Movants and Appellants.

898

COUNSEL

Hill, Farrer & Burrill and Dean E. Dennis for Movants and Appellants.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and Daniel A. Olivas, Deputy Attorney General, for Defendants and Respondents.

OPINION

**MALLANO, Acting P. J.**—John M. Heidt and Mary Ann K. Heidt, as trustees of the John M. Heidt Family Trust, Anne Heidt Sebastian, and John K. Heidt (the Heidts) appeal from an order denying their motion for leave to intervene in an action brought by the City of Malibu (Malibu) and David Geffen against defendants Access for All, a public benefit corporation, public agencies California Coastal Commission and California Coastal Conservancy, and Peter Douglas and Sam Schuchat in their capacities as officers of the public agencies. The Heidts contend that the trial court abused its discretion in denying intervention, arguing that they have a "direct and immediate interest" in the litigation, that their interests are not being adequately protected by Geffen, and that intervention would not enlarge the issues in the case. Because we conclude there was no abuse of discretion in the denial of intervention, we affirm.

## BACKGROUND

The Heidts, who are the heirs of "big band" leader Horace Heidt, own a beachfront house on Pacific Coast Highway in the Carbon Beach area of Malibu. Geffen, a well-known entertainment industry executive, owns a residence that is situated on four contiguous beachfront lots, one of which lies immediately to the west of the Heidt residence. (The shoreline at Carbon Beach runs east-west.) In 1983, Geffen applied to the Coastal Commission for a permit to make certain improvements to his property. The Heidts appeared at Coastal Commission hearings on the permit and urged that it not be granted. The Heidts did not prevail and a permit was issued. The permit included a condition that Geffen sign an offer to dedicate (OTD) easements "to the People of California or the [Coastal] Commission's designee" that would give the public vertical and lateral access to the shoreline.[1] By its terms, the OTD would expire if not accepted within 21 years. With respect to the vertical easement, which is at the crux of this case, the OTD provided in part: "Said vertical access easement shall be located within an 18' wide corridor paralleling the western most property line of [Geffen's] property and shall provide for a privacy buffer of at least 9' in width between the access way [and the] developed property to the west of [Geffen's] holdings"; that is, the property belonging to the Heidts. Geffen signed the OTD.

---

[1] Vertical access, which is roughly perpendicular to the shoreline, would enable members of the public to walk from Pacific Coast Highway to the shoreline. Lateral access would allow members of the public to walk along portions of the shoreline. (See *La Costa Beach Homeowners' Assn. v. California Coastal Com.* (2002) 101 Cal.App.4th 804, 807 [124 Cal.Rptr.2d 618].)

In 1991 and 2000, two additional development permits were issued to Geffen, both conditioned on Geffen signing OTD's for additional lateral access. Again, Geffen did so.

On January 16, 2002, Access for All, the Coastal Commission, and the Coastal Conservancy entered into an agreement which provided that Access for All would manage the vertical easement and three lateral easements granted by Geffen. The agreement stated in part: "Access for All intends to operate [the] vertical easement from sunrise to sunset, consistent with Los Angeles County beach opening hours, as soon as possible. There is currently a wooden gate at the PCH sidewalk, presumably built by [Geffen], which could in theory be opened immediately. However, Access for All intends to work with the property owner to develop an access plan for sunrise to sunset access." On January 17, a "Certificate of Acceptance" was recorded with the Los Angeles County Recorder. It stated that Access for All had accepted Geffen's OTD's and that the Coastal Commission acknowledged the acceptance.

On July 3, 2002, Geffen and Malibu filed a petition and complaint against defendants Coastal Commission, Coastal Conservancy, the officers of these agencies, and Access for All, with Geffen alleging three causes of action in mandate, 10 causes of action for injunctive and declaratory relief, and a cause of action for quiet title. Malibu's allegations were limited to six of the causes of action. The gravamen of the petition and complaint was that the OTD's were invalid and that the process by which Access for All had accepted the OTD's violated constitutional and statutory law in several respects, including by failing to provide proper notice, by failing to be part of a statewide coastal access plan, and by failing to provide for environmental analysis. Defendants Coastal Commission, Coastal Conservancy, and their officers demurred to the petition and complaint, and to succeeding amended petitions and complaints, discussed below. (Access for All joined the demurrers of its codefendants.) The demurrer to the original complaint was sustained in part.

Geffen and Malibu thereafter filed a first amended petition and complaint. On December 6, 2002, a demurrer to this pleading was sustained in part, the trial court ruling that Geffen was barred from advancing any argument in this action that could have been made when he first signed the OTD's.

Also on December 6, 2002, the Heidts filed a motion for leave to file a complaint in intervention. In their motion, the Heidts asserted that they had satisfied the requirements of Code of Civil Procedure section 387, subdivision (b), for mandatory intervention and alternatively that they should be granted permissive intervention under subdivision (a) of that section. (Further

section references are to the Code of Civil Procedure.) Defendants opposed the Heidts' motion. On January 14, 2003, in conjunction with a ruling regarding clarification of the December 6 order sustaining defendants' demurrer, the Heidts' motion was placed off calendar until a second amended petition and complaint had been filed.

A renewed request for intervention in the second amended petition and complaint was later denied without prejudice. Geffen and Malibu next filed their third amended petition and complaint, this time containing a total of two causes of action in mandate, six causes of action for declaratory and injunctive relief, and a cause of action for quiet title.

The Heidts again filed a motion for leave to intervene, now seeking to join in all causes of action of the third amended petition and complaint except for the allegation of quiet title. In support of their motion, the Heidts stated that they had never applied to the Coastal Commission for any development permits, had not received any benefit from the permits granted to Geffen, and had not received notice of the acceptance of Geffen's OTD's by Access for All. The Heidts asserted that their property would be directly affected by use of the vertical accessway, explaining that while the Geffen property "is sheltered from the accessway by a substantial wall, the front porch of the Heidt home looks directly upon and is less than 20 feet from the proposed accessway and gate." Also, "it will be quite easy for the public to trespass on the Heidt lot for any variety of legal and illegal purposes, use the property to deposit trash, etc. The beach currently has no lifeguards, no restrooms, no parking, or any kind of public facility." The Heidts added that Geffen and Malibu did not object to their intervening in the action.

On September 8, 2003, in conjunction with a ruling partially sustaining a demurrer to the third amended complaint, the Heidts' motion for intervention, which defendants had opposed, was denied.

The Heidts filed their notice of appeal from the trial court's ruling on November 6, 2003.[2] More amended petitions and complaints were later filed by Geffen, ultimately culminating in a sixth amended petition and complaint in which Malibu is no longer a party plaintiff. Defendants' answer was filed on October 28, 2004. The matter was set for trial to begin on June 6, 2005. At the March 22, 2005 oral argument on this appeal, counsel informed us that "the June trial had been put off for another 30 days," that it would be a mandate hearing (heard by the Honorable David P. Yaffe, who has made all of the rulings mentioned in this opinion), and that the hearing will be based on

---

[2] An appeal may be taken from an order denying a motion to intervene. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953].)

documentary evidence and declarations, with a possibility of live testimony, if appropriate.

## RELEVANT LEGAL PRINCIPLES

■ Section 387, subdivision (a), provides that "[u]pon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention . . . is made by complaint . . . filed by leave of the court . . . ." Stated differently, " 'the court has *discretion* to permit a nonparty to intervene in litigation pending between others, provided: [¶] The nonparty has a *direct and immediate interest* in the litigation; and [¶] The intervention will *not enlarge* the issues in the case; and [¶] The reasons for intervention outweigh any opposition by the existing parties. [Citations.]' [Citation.]" (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346 [70 Cal.Rptr.2d 255].)

Under section 387, subdivision (b), "if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

■ "[C]ourts have recognized California Code of Civil Procedure section 387 should be liberally construed in favor of intervention. [Citation.]" (*Lincoln National Life Ins. Co. v. State Bd. of Equalization* (1994) 30 Cal.App.4th 1411, 1423 [36 Cal.Rptr.2d 397], fn. omitted.) Nonetheless, "[a] trial court has broad discretion in determining whether to permit intervention. [Citations.]" (*US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 139 [111 Cal.Rptr.2d 689]; see also *County of Alameda v. Carleson, supra,* 5 Cal.3d at p. 736, fn. 4.)

## DISCUSSION

Unlike their arguments in the trial court, the Heidts' contentions on appeal do not separately address mandatory and permissive intervention. Rather, the contentions focus on whether the Heidts have shown a direct and immediate interest in the action, whether their interests are adequately protected by Geffen, and whether their intervention in the action will enlarge the issues. Defendants (except Access for All, which has not appeared on appeal) argue that none of these elements has been established because the Heidts'

interests are merely speculative and are adequately protected by Geffen, who has identical interests, and participation by the Heidts would unduly enlarge the litigation.

The Heidts first address the question of direct and immediate interest. They note that the vertical accessway, which includes a "privacy buffer," is adjacent to their house and ask: "Why isn't the Heidts' interest at least as strong as those in *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192 [242 Cal.Rptr. 447], A[.] *E. Bell Corp. v. Bell View Oil Synd*[.] (1938) 24 Cal.App.2d 587, 604 [76 P.2d 167]; and *Highland Development Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 169, 179 [215 Cal.Rptr. 881] [disapproved on another point in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143]]?" The Heidts also rely on *Weiner v. City of Los Angeles* (1968) 68 Cal.2d 697 [68 Cal.Rptr. 733, 441 P.2d 293]. Their reliance is misplaced.

We initially focus on the latter three of the Heidts' cases. In *Weiner v. City of Los Angeles, supra,* 68 Cal.2d at page 706, in two sentences addressing "plaintiffs' further contentions," the Supreme Court stated that a residential property owner had properly intervened in litigation between a developer and the city regarding the setback for a house the developer was planning to build next door. In *A. E. Bell Corp. v. Bell View Oil Synd., supra,* 24 Cal.App.2d at page 604, which was an action by a landowner against an adjoining landowner alleging that the latter's drilling operation had encroached on the former's property rights, a second adjoining landowner who also asserted that her rights had been encroached was an "interested party" who had properly been allowed to intervene. In *Highland Development Co. v. City of Los Angeles, supra,* 170 Cal.App.3d at page 179, intervention by an association of owners of single-family residences in a historic district was upheld on appeal in an action in which the developer of an apartment project next to the district was seeking to enforce a permit allowing use of a driveway to the new project that abutted the historic homes. The *Highland Development* court also concluded that the homeowners' association should have been included as a party in the developer's action under rules of compulsory joinder and thus intervention was also supported by the mandatory provisions of section 387, subdivision (b).[3] (*Highland Development, supra,* 170 Cal.App.3d at p. 180.)

In these three cases, the trial court exercised its discretion to allow intervention and no abuse was found. But there is nothing in the opinions which would suggest that a ruling denying discretionary intervention in this

---

[3] *Weiner v. City of Los Angeles, supra,* 68 Cal.2d 697, and *A. E. Bell Corp. v. Bell View Oil Synd., supra,* 24 Cal.App.2d 587, were decided before section 387 was amended to include subdivision (b), which first provided for mandatory intervention under appropriate circumstances. (Stats. 1977, ch. 450, § 1, p. 1486.)

case would constitute an abuse of that discretion. Indeed, as noted by defendants, there are instances in which no abuse of discretion was found in the denial of a motion to intervene by parties whose property was proximate to property that was the subject of the action. (See *Alhambra v. Jacob Bean Realty Co.* (1934) 138 Cal.App. 251, 252 [31 P.2d 1052] [in eminent domain action by city for a reservoir project, intervention properly denied to landowner of parcel adjacent to proposed reservoir]; *People v. City of Long Beach* (1960) 183 Cal.App.2d 271, 275 [6 Cal.Rptr. 658] [allegation that person seeking to intervene "owns houses on lots *near* the lands in litigation is far short of a claim to any interest in the lands *in* litigation"].)

The fourth of the Heidts' cited cases is, like the case before us, an appeal from the denial of a request for intervention. In *Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d 1192, a lumber company (Simpson) filed a complaint against the state, seeking title to certain parcels of redwood forestland that were within Prairie Creek Redwoods State Park (the Park). The land on which the Park was situated had been acquired in stages starting in 1923 by both the state and Save-The-Redwoods League (the League). In 1932, the League donated its acquisitions to the state for inclusion in the Park, which was established in 1933. Surveys conducted years later suggested that parcels within the Park's marked boundaries might actually belong to Simpson. The League sought leave to intervene in Simpson's quiet title action, and its request was denied. (*Id.* at pp. 1197–1199.)

On appeal, the *Simpson* court held that the League had a sufficient interest to support intervention as a matter of discretion, noting that the League was instrumental in establishing the Park, that members of the League frequently used the Park, and that the League's "reputation and integrity as a conservation organization will suffer if property which it acquired through donation and targeted for preservation is transferred to private ownership for exploitation." (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at p. 1200.) "That [the League] will not suffer direct *pecuniary* harm, and has failed to establish with absolute certainty the detriment an adverse judgment might cause, does not defeat its right to intervene. It is not necessary that an intervener's interest ' "be such that he will *inevitably* be affected by the judgment. It is enough that there be a substantial *probability* that his interests will be so affected." ' [Citations.]" (*Id.* at p. 1201.)

After determining that the effect of delay that would be caused by intervention was not substantial, the *Simpson* court's analysis concluded: "A final telling factor in our decision is the conviction that [the League's] own substantial interests probably cannot be adequately served by the State's sole participation in the suit, since it here seeks merely to protect its fee interest in the property, which may turn out to be simply pecuniary in nature. The State

might, for example, choose to settle the case for a monetary consideration in exchange for relinquishment of its claims of title to the land. But [the League's] interest in the litigation—to preserve the property in its natural condition—is singular and indeed unique, and powerfully militates in favor of intervention. [Citation.]" (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at pp. 1203–1204.)

"For all of the foregoing reasons," the *Simpson* court held that the trial court's denial of the League's motion to intervene constituted an abuse of discretion. (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at p. 1204.)

In relying on *Simpson*, the Heidts focus on language stating that the lack of direct harm to the League did not bar intervention. They also emphasize the language that a " ' "substantial *probability*" ' " of the intervener's interest being affected is " ' "enough." ' " (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at p. 1201.) But, when viewed in context, these aspects of *Simpson* are not helpful to the Heidts. Although the Heidts are proximate to the property under consideration and the League was not, the interest of the League in preserving the character of the Park was based on long-term, intimate involvement with the Park, which it helped to establish for the benefit of the public.

The League's interest was also *"direct and immediate"* (*Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at p. 346) because if Simpson were to prevail on its claim of ownership, the loss of public parkland would immediately damage the reputation and integrity of the League as a conservation organization. In contrast, if defendants prevail in this case and the public accessways are opened, there are no immediate consequences because the Heidts can only speculate that members of the public will trespass and litter on the portion of the beach that the Heidts own and thereby ultimately affect the quiet enjoyment of their property. Indeed, if such speculation provided a basis on which intervention could be required, the Heidts' neighbors to the west, Geffen's neighbors to the east, and the neighbors of those neighbors would be in a position to demand intervention because persons using the vertical accessway on Geffen's property (as well as vertical accessways that apparently exist approximately 1,000 feet to the east and 2,000 feet to the west of the accessway on Geffen's property) would likely walk along the beach beyond the Heidt and Geffen residences and might trespass and litter on these properties as well. But the possibility of what some ill-mannered citizens might do cannot create an entitlement for landowners up and down the Malibu coast to interject themselves into every dispute regarding the right of public access to the beach.

The *Simpson* case also speaks to the question of whether the Heidts' interests are adequately represented by Geffen. The *Simpson* court determined that the state did not necessarily share the League's commitment to preservation of the parkland in its natural condition. Accordingly, the state might be amenable to resolving the litigation for monetary consideration, although the League would not. (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at pp. 1203–1204.) In contrast, the Heidts and Geffen have identical interests in preventing members of the public from accessing areas adjacent to their properties. And the Heidts have not claimed that Geffen has failed to pursue any available legal theory in this regard. To the contrary, it may readily be gleaned from the record on appeal that Geffen has been an able advocate of his and the Heidts' position in attempting to prevent public use of Geffen's easements.

The Heidts further assert that they "have a direct interest in enforcing [the 'privacy buffer'] provision and in how it gets interpreted." This interest does not support intervention. Inasmuch as there is nothing in the record to indicate how the provision will be interpreted in protecting the Heidts' privacy, the Heidts' interest is once again not immediate because they can only speculate that they will be dissatisfied with the interpretation. It is also significant that the Heidts' concern about the privacy buffer is specific to them. Thus, inclusion of this issue would necessarily enlarge the litigation.

■ We are mindful that section 387 is to be liberally construed to permit intervention. But the decision whether to permit intervention remains a matter of judicial discretion, which is abused only " 'whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Here, regardless of what our inclination on the issue might have been were we considering it de novo, a judge who has heard all of the demurrers and motions in this matter and will preside at the mandate hearing has exercised his discretion to deny intervention. Our view of the question, as set forth in this opinion, is that the decision to deny intervention was reasonable. Accordingly, that decision must be upheld on appeal.

### DISPOSITION

The order under review is affirmed.

Suzukawa, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**VOGEL, J.**—To me, this is a paradigm case for intervention—and I therefore dissent.

## FACTS

### A.

The relevant background facts are not disputed. John M. Heidt and Mary Ann K. Heidt own a relatively modest beach house (a 1940's house on a 45-foot wide lot) adjacent to the more substantial property owned by David Geffen (a residence situated on four contiguous beachfront lots). In 1983, the Coastal Commission (over the Heidts' objections) granted Geffen's application for a permit to improve his property, subject to a condition that Geffen sign an "offer to dedicate" (OTD) vertical and lateral easements to the Coastal Commission's designee to provide public access to the shoreline. The vertical access easement would run between Geffen's property and the Heidts' property, with "a privacy buffer of at least 9' in width between the access way" and the Heidts' property.[1] Additional permits, subject to OTD's for lateral but not vertical access, were issued to Geffen in 1991 and 2000.

Under the terms of the 1983 OTD, the offer to dedicate remained open and could be accepted at any time within 21 years, but certain things were to be done before it was accepted by the Coastal Commission's designee: "Prior to the opening of the accessway, [the Coastal Commission], in consultation with [Geffen], may record additional reasonable terms, conditions, and limitations on the use of the subject property in order to assure that this Offer for public access is effectuated." For 19 years, nothing happened—the OTD was not accepted by the Coastal Commission and the path between the houses was closed off by Geffen's locked gate.

In January 2002, without consultation with Geffen as required by the OTD, the Coastal Commission conveyed the OTD to Access for All (a nonprofit organization), which accepted the OTD, prepared a Public Access Easement Management Plan, and moved ahead to open the vertical access as soon as possible.[2] Although the California Coastal Conservancy thereafter approved

---

[1] Photographs in the record on appeal show a path between the properties, along the exposed side of the Heidts' house (there is a wall separating Geffen's house from the path). The photographs were taken in August 2003.

[2] The Public Access Easement Management Plan prepared by Access For All (which appears to have no real address, only a post office box number) offers a vague explanation of its intent vis-à-vis the vertical access, with a noticeable omission of any reference to the Heidts' or their property: "Access for All intends to operate this vertical easement from sunrise to sunset, consistent with Los Angeles County beach opening hours, as soon as possible. There is currently a wooden gate at the PCH sidewalk, presumably built by [Geffen], which could in

the Management Plan, and also granted limited public entity tort immunity to Access for All, no notice was given to the public and no hearings were held—and Geffen was first notified of these events after they were a fait accompli. The Heidts never received notice of the acceptance of the OTD's, the approval of Access for All's plan, or the grant to Access for All of limited public entity tort immunity.

B.

In July 2002, Geffen filed a petition for a writ of mandate and complaint to challenge the Coastal Commission's transfer to Access for All and to stop Access for All from opening the vertical access at all or, alternatively, only after certain steps were taken.[3] The Coastal Commission, Access for All (and other defendants included in my references to the Coastal Commission) demurred, and the demurrers were sustained with leave to amend. A first amended petition and complaint was filed, and promptly followed by another demurrer, which was (on December 6) sustained with leave to amend. On the same day (December 6), the Heidts filed their motion for leave to intervene and their proposed complaint in intervention. (Code Civ. Proc., § 387.)[4]

The Heidts succinctly summarized Geffen's claims and Heidts' interest in those claims: "The underlying action [by Geffen against the Coastal Commission and Access for All seeks a] writ of mandate and declaratory relief, among other things. It alleges numerous violations of law related to the acceptance of longstanding offers to dedicate public access easements and anticipatory to the opening of these accessways to the public over, across and along Geffen's property to the sandy beach. [¶] [T]he Heidts[] are property owners in Malibu who are immediate upcoast neighbors of Geffen and the proposed accessway. The Heidts claim an interest relating to the property which is the subject of the main lawsuit, and are so situated that the disposition of the main lawsuit may as a practical matter impair or impede

---

theory be opened immediately. However, Access for All intends to work with [Geffen] to develop an access plan for sunrise to sunset access. This may include a re-design with new gates, hopefully with a time lock mechanism. Due to the layout of the required access to the properties, signage is essential. Since the vertical easement is not contiguous with the lateral easements, the public's use area must be made clear, and [Geffen's] 10-foot privacy buffer must be explained. Signs will be installed and a schematic of the location and wording are attached; final wording will be submitted for review prior to installation." Although the OTD includes lateral access in front of Geffen's property, there is no such access right across the sandy beach owned by the Heidts—yet the plan fails to acknowledge the trespasses that are sure to occur once the vertical access is opened, and fails to acknowledge the absence of lifeguards and public toilets in the area.

[3] The City of Malibu joined with Geffen in the original and several amended petitions, but ultimately withdrew and is not a party to the operative pleadings (Geffen's sixth amended complaint, and the Coastal Commission's cross-complaint) or to this appeal.

[4] All section references are to the Code of Civil Procedure.

their ability to protect their own interests unless leave to intervene is granted." On January 2, 2003, the Coastal Commission opposed the Heidts' motion for leave to intervene, contending the Heidts' motion failed to establish that the Heidts had a "direct or immediate" interest in Geffen's lawsuit.

On January 14, the trial court clarified its rulings on the demurrer and took the Heidts' motion for leave to amend "off calendar because the proposed complaint in intervention makes allegations identical to those in [Geffen's] first amended petition, to which a demurrer has been sustained. . . . The [Heidts] may recalendar their application to intervene at such time as [Geffen] file[s] a second amended petition . . . . [The Heidts] are ordered to set forth in any such application whether they only join in the allegations made by [Geffen] or, if not, . . . to set forth what additional issues will be added to the proceeding if they are permitted to intervene."

## C.

Geffen filed a second amended petition and complaint on February 4, to which the Coastal Commission demurred on March 4. The petition sought three writs of mandate (§ 1085), one invalidating Geffen's agreements with the Coastal Commission on the ground that the agreements violated a variety of laws, another commanding compliance with the California Environmental Quality Act (CEQA), and the third compelling compliance with the Coastal Access Act; the complaint sought declaratory relief on several different grounds, and quiet title with regard to the Coastal Commission's claim to a right of public access over Geffen's property.

On March 26, the Heidts filed a new motion for leave to intervene in which they spelled out their compliance with the trial court's earlier order, stating that their proposed complaint in intervention joined in all of Geffen's claims except the one for quiet title and explaining their intent: "By joining with Geffen . . . in [his] second amended complaint, [the Heidts] do not mean to suggest that their legal status is identical. For example, the Heidts have never applied to the Coastal Commission for any Coastal Development Permits or other entitlements[,] have never offered to dedicate any of their property for public access[, and have not received any] benefit from the Coastal Development Permits received by Mr. Geffen." The Heidts went on to list the steps that had been taken without notice to them, and conceded that, for this

reason, their "legal position may vary from that of Geffen . . . on issues such as statutes of limitation, estoppel, [and] waiver . . . ." The Coastal Commission once again opposed intervention.

On May 28, the trial court took the Coastal Commission's demurrer off calendar, struck Geffen's second amended complaint on its own motion, and denied without prejudice the Heidts' motion for leave to intervene. With regard to intervention, the court had this to say: *"The Heidts have an obvious interest in defeating the right of [the Coastal Commission to] open the dedicated access to the beach through Geffen's property, but they have no interest, different from any other member of the public, in the basic issues raised by the Second Amended Complaint, which are whether Geffen, as the offeror, can bar [the Coastal Commission] from enforcing his offers to dedicate portions of his property for public access to the beach.* The interest of the Heidts is not sufficient to permit them to intervene as a matter of right. . . .

"Furthermore, the Heidts, unlike Geffen, assert a cause of action for damages for inverse condemnation, which cannot be heard in this department (Local Rule 2.5(i)), and which will require testimony of live witnesses and a potential jury trial. Final resolution of the dispute between the parties to this proceeding will therefore be delayed until the Heidts separately litigate their inverse condemnation claim. The intervention will therefore enlarge the issues in the case, and the reasons for intervention do not outweigh the opposition by the [Coastal Commission]." (Italics added.)

### D.

Geffen filed his third amended petition and complaint on June 30, the Coastal Commission demurred at the end of July, the Heidts again moved to intervene (this time without a claim of inverse condemnation), and the Coastal Commission once again opposed intervention. The trial court overruled the demurrer in part, sustained it in part, and denied the Heidts' motion to intervene:

"The Heidts will not be permitted to intervene in this proceeding because, as they acknowledge, their relationship to the public easements is far different from Geffen's. The Heidts never offered to dedicate any of their property for public access, and never received any benefit from the Coastal Development permits sought and obtained by Geffen. The issues raised by Geffen are primarily those arising from the consensual relationship between Geffen and

the Coastal Commission. The issues raised by the Heidts are far different and will greatly enlarge the issues that must be resolved in this case. Intervention is opposed by [the Coastal Commission] for that reason, and the reasons for intervention do not outweigh such opposition. *The Heidts can protect their interests by filing a separate action. If necessary, the court can relate or consolidate the actions to the extent necessary to prevent conflicting rulings on common issues of law or fact.*" (Italics added.) The Heidts' appeal is from this order.

## E.

The Heidts were out but the pleading war continued, with Geffen filing a fourth, fifth, and—finally—a sixth amended petition and complaint (on October 1, 2004). The operative pleading is now limited to five causes of action seeking declarations of Geffen's rights in light of his allegations (1) that the OTD's created unanticipated servitudes on the property; (2) that the Coastal Commission failed to follow the law in implementing the OTD's; (3) that Geffen's due process rights were violated; (4) that the Coastal Commission failed to conduct a supplemental environmental assessment before the OTD's were accepted; and (5) that, at the times relevant to this action, the Coastal Commission was a legislative body that impermissibly exercised the powers of the executive or judicial branches of government.

The Coastal Commission finally answered on October 28, 2004, almost a full year after the Heidts filed their notice of appeal from the order denying their motion for leave to intervene. But the case was not yet at issue—because the Coastal Commission also filed a cross-complaint against Geffen, a civil enforcement action alleging that Geffen had violated certain terms and conditions of the coastal development permits issued to him in 1983, 1991, and 2000, and seeking declaratory and injunctive relief as well as daily fines of not less than $1,000 per day.

The record does not disclose whether or when Geffen answered the cross-complaint, or whether the case is yet at issue, or whether a trial date has been set.[5]

---

[5] At oral argument, the Coastal Commission's counsel represented that, notwithstanding the absence of any current petition for a writ of mandate, the case is being treated as a petition for a writ of mandate (§ 1085), that discovery has been conducted, that a hearing date has been set for later this year, and that there will be a hearing on declarations, not a trial with live testimony.

## DISCUSSION

The Heidts' contention on this appeal is that the harm to them occurred when the OTD's were transferred to and accepted by Access for All, without the required consultation with Geffen, or any notice to Geffen or the Heidts or other opportunity for them to express their opposition to the nature or scope of the planned public access. The concerns expressed by the Heidts—and by Geffen in his petition and complaint—are that there is no way for them to know whether Access for All (a nonprofit organization apparently formed for the sole purpose of accepting Geffen's OTD's) has the financial ability to maintain and insure the accessway for the benefit of the adjacent property owners, or whether Access for All has the means to provide necessary safeguards (such as controlling hours of access, providing public restroom facilities, arranging for trash collection, and so on). The Heidts also claim (as does Geffen) that the 19-year gap between the execution of the OTD's by Geffen and the acceptance by Access for All has CEQA implications, and that Access for All's vague plan fails to consider a number of significant environmental issues (including a dramatic increase in traffic on the Pacific Coast Highway). I agree with the Heidts' contention that these issues cry out for intervention.

### A.

As relevant, subdivision (a) of section 387 (permissive joinder) provides that, "[u]pon timely application, any person[] who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . ." As relevant, subdivision (b) of section 387 (intervention as a matter of right) provides that, "if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene." (See *California Physicians' Service v. Superior Court* (1980) 102 Cal.App.3d 91, 96 [162 Cal.Rptr. 266].)

Concerns about whether intervention is proper must in my view be tempered by three basic rules of intervention. First, section 387 must be liberally construed in favor of intervention in any kind of action, legal or

equitable. (*Lincoln National Life Ins. Co. v. State Bd. of Equalization* (1994) 30 Cal.App.4th 1411, 1423 [36 Cal.Rptr.2d 397]; *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200 [242 Cal.Rptr. 447]; see, e.g., *Robinson v. Crescent City etc. Co.* (1892) 93 Cal. 316, 319 [28 P. 950].) Second, "it is elemental that an intervener who comes into the case to join a plaintiff does so in subordination to and in recognition of the propriety of plaintiff's case." (*Mann v. Superior Court* (1942) 53 Cal.App.2d 272, 280 [127 P.2d 970].) Third, the purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment. (*Catello v. I.T.T. General Controls* (1984) 152 Cal.App.3d 1009, 1013 [200 Cal.Rptr. 4].) With these rules in mind, I turn to the specific rules governing this case.

### B.

Where, as here, the putative interveners have claims related to the property and transactions that are the subject matter of the litigation, their right to intervene is not diminished by their independent interests. (*Belt Casualty Co. v. Furman* (1933) 218 Cal. 359 [23 P.2d 293] [intervention allowed in equitable action for rescission, notwithstanding that intervener sought affirmative legal relief]; *People v. Superior Court (Good)* (1976) 17 Cal.3d 732 [131 Cal.Rptr. 800, 552 P.2d 760] [district attorney brought suit for damages for false advertising and unfair competition; investors allowed to intervene to assert their own claims for restitution, punitive damages, and attorney's fees].)

On strikingly similar facts, *Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d 1192, allowed intervention in just such a case. In that case, Simpson initiated the action with a complaint to quiet title to certain timberlands and for declaratory relief against the State of California. Save-The-Redwoods League, which had previously owned the land in question, promptly moved to intervene, asserting an interest in the old growth redwood forest sought by Simpson in its complaint. The trial court denied intervention, and the League appealed. (*Id.* at pp.1196–1197.)

On appeal, Simpson claimed the League's interest was indirect and remote (a claim echoed by the Coastal Commission in our case). The reviewing court agreed that an intervener's interest in the litigation must be direct, not consequential, but explained that the nature of the necessary direct interest in

the litigation is one that must be determined on the facts of each case, always mindful of the rule that section 387 should be liberally construed in favor of intervention. (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at pp. 1199–1200.) Although the League did not claim any interest in the land itself or claim any pecuniary harm, its interest in Simpson's quiet title action was sufficient because the League contributed to the creation of the park surrounding the area, its members used the park, and because—for as long as the State owned the property—the League had a right to control the manner in which the subject property was developed. (*Id.* at pp. 1200–1202.) In my view, the Heidts' interest in the use of Geffen's property and his OTD's is substantively indistinguishable from the League's interest in the dispute between Simpson and the State.

Simpson (in another argument echoed by the Coastal Commission in our case) claimed intervention would cause delay and confusion. The reviewing court rejected the claim: "While [the League] undeniably intends to introduce new causes of action, our analysis of the nature of such new matters convinces us it will not delay the litigation, change the position of the parties, or even require introduction of additional evidence. . . . Resolution of [the issues raised by the League] will center upon essentially the same facts as those involved in the State's claims . . . . We perceive no danger that the dedication issue will prolong, confuse or disrupt the present lawsuit." (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at pp. 1202–1203.) In my view, the same is true in our case. In its sixth incarnation, Geffen's operative pleading challenges the manner in which the Coastal Commission conveyed the OTD's to Access for All, the manner in which Access for All accepted the OTD's, and the failures of both to comply with the applicable laws. The Heidts challenge precisely the same acts, and any delay would be inconsequential—keeping in mind that this case will be tried on declarations and documentary evidence, and recognizing that our evaluation of the delay must be based on the status of the case at the time intervention was sought (which was early in the pleading stage).

As the *Simpson* court also noted in this context, intervention should not be denied where, as here, the putative intervener would be forced to bring a separate action against one or more of the parties to the action into which intervention is sought. (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at p. 1203.) For this reason, I would not give any weight to the trial court's suggestion that the Heidts file their own action, which might or might not be consolidated with Geffen's action—a suggestion that ignores the benefits of intervention as well as the Heidts' *right* to intervention.

In *Simpson,* the court considered it significant that the League's own substantial interests could not be adequately served by the State's sole participation in the suit, since it sought merely to protect its fee interest in the property, which it might accomplish by a settlement that did not address the League's concerns—which were unique and, as a result, "powerfully militate[d] in favor of intervention." (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at pp. 1203–1204; see also *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655, 665 [195 Cal.Rptr. 186].) In my view, this is equally true in our case. Assuming the truth of the Heidts' allegations, the outcome of Geffen's lawsuit will determine whether and to what extent the Heidts' property is subjected to the burdens attendant to the OTD's given by Geffen, not by the Heidts. As the Heidts tried unsuccessfully to explain to the trial court and to my colleagues, it is this difference that compels rather than defeats intervention.[6]

## C.

As the Heidts put it in their brief, "[w]hat had been a vacant strip of Geffen's land next to the Heidts' front porch, closed off to the street by a locked gate, is now slated to become a thoroughfare for the public to the beach that lacks restrooms, lifeguard supervision, and parking. How can the Heidts not be directly impacted by litigation over the opening and management of that public walkway?" In my view, they are right—the undefined "privacy buffer" easement created by the 1983 OTD was created for the benefit of the Heidts, and that buffer (whatever its nature) is now at risk of destruction.

---

[6] For the same reasons, I agree with the Heidts that the other cases they rely on (*Weiner v. City of Los Angeles* (1968) 68 Cal.2d 697, 706 [68 Cal.Rptr. 733, 441 P.2d 293] [in an action challenging orders for compliance with zoning laws, "interveners, who own the lot next door to plaintiffs' . . . are parties in interest *entitled* to intervene" (italics added)]; *A.E. Bell Corp. v. Bell View Oil Synd.* (1938) 24 Cal.App.2d 587, 604 [76 P.2d 167] [adjoining landowners entitled to intervene in neighbors' action against oil well drillers for trespass]; and *Highland Development Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 169, 179–180 [215 Cal.Rptr. 881] [in developer's dispute over right to a permit, homeowners' association with contiguous neighborhood relationship to the project allowed to intervene], disapproved on another point in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143]) support their position and compel reversal in this case. (See also *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 348 [70 Cal.Rptr.2d 255] [intervention proper where it preserves the intervener's rights]; *US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 139 [111 Cal.Rptr.2d 689] [intervention proper where the party has a direct and immediate interest in the action, the intervention will not enlarge the issues, and the reasons for the intervention outweigh any opposition by the present parties to the action].)

In my view, this is not a close case. Intervention should have been granted, and the order denying the Heidts' motion for leave to intervene should be reversed.[7]

A petition for a rehearing was denied May 24, 2005.

---

[7] I have said little about the Coastal Commission's position because it is so obviously a matter of tactics, not law or equity. The Heidts' position, right or wrong, is at a minimum stronger than Geffen's because the OTD's were issued over the Heidts' opposition and without the slightest benefit to them. Aside from the sympathetic gloss this gives to their claims, there is the fact that they received no notice that, 19 years after Geffen got his permits, wheels that were frozen in place had started to turn and were rolling downhill and directly into their house. In any event, the cases relied on by the Coastal Commission are factually inapposite and legally irrelevant.